## BERWIND v. COMMISSIONER OF INTERNAL REVENUE.

## CREIGHTON v. SAME.

### Nos. 8143, 8144.

Circuit Court of Appeals, Third Circuit.

Argued Dec. 10, 1942.

Decided Aug. 4, 1943.

Kenneth W. Gemmill, of Philadelphia, Pa. (Robert Dechert and Barnes, Dechert, Price and Smith, all of Philadelphia, Pa., on the brief), for petitioners.

Arthur Manella, of Washington, D. C. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and Samuel H. Levy, Sp. Assts. to Atty. Gen., on the brief), for respondent.

Before BIGGS, JONES, and GOODRICH, Circuit Judges.

BIGGS, Circuit Judge.

The respondent determined deficiencies in the income tax of the petitioners, Charles G. Berwind and Edward B. Creighton,[1] for the years 1936 and 1937.[2]

The question presented for our determination is whether Berwind and Creighton were the equitable owners of certain securities during the taxable years 1936 and 1937, so as to be taxable on the income from, and the capital gains realized from trading in the securities, pursuant to the provisions of Section 22 of the Revenue Act of 1936, c. 690, 49 Stat. 1648, 26 U.S.C.A. Int.Rev. Acts, page 825.[3]

The alleged deficiencies result from transactions by Berwind and Creighton which began in 1931. At that time Creighton and Berwind[4] and Thomas Fisher were stockholders of the Penn Colony Trust Company of Philadelphia. The capital of the Trust Company was impaired due in part to the fact that certain securities owned by it and carried on its books at a value of $250,941.-29 possessed in fact a market value of only half that amount. This condition had been called to the attention of the Trust Com-

---

[1] The two cases were consolidated for hearing and for all other purposes before the United States Board of Tax Appeals. By order of this court, entered September 21, 1942, they likewise were consolidated for hearing.

[2] The petitioner, Marcella D. Creighton, is the executrix of the will of Creighton who died in 1939.

[3] The pertinent provisions of Section 22 are as follows:

"Sec. 22. Gross Income

"(a) General Definition. 'Gross income' includes gains, profits, and income derived from salaries, wages, or compensation for personal service, of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. * * * "

[4] The record shows that Berwind was also a director of, and a depositor in the Trust Company.

452

pany by the Banking Department of the Commonwealth of Pennsylvania and it is to be inferred that one of the factors which led to the transactions of Berwind and Creighton or those acting for them was the impairment of the capital of the Trust Company.

In August 1931 the Trust Company received a check in the amount of $125,416.14 from Mrs. Creighton. This amount was credited by the Trust Company to its stock account in its general ledger. On September 10, 1931, the Trust Company received instructions from the Berwind-White Coal Mining Co. to charge its savings account with the amount of $125,525.15. This was done. As a result the capital impairment of the Trust Company was repaired to the extent of approximately $125,000.

On September 22, 1931 the board of directors of the Trust Company adopted a resolution which approved the sale of the securities to Creighton for a price of $250,941.29 and the officers of the Trust Company were ordered to transfer the securities to Creighton. On October 26, 1931, however the board of directors adopted a second resolution which corrected that of September 22, 1931. The second resolution recited that Creighton, acting for himself and others, had offered to purchase at the original cost to the Trust Company, half of the securities for the sum of $125,416.15; that this offer was accepted and that these securities were to be conveyed to him. The correcting resolution also stated that the Berwind Company had paid $125,525.15 for the purchase of certain securities having a cost to the Trust Company in the amount stated and that these securities also were to be transferred to Creighton.

On November 23, 1931, an agreement, relating to the securities referred to in the last resolution as having been paid for by the Berwind Company, was entered into between Berwind, Creighton and D. Vincent Johnston as trustees, Berwind, Creighton and Thomas Fisher, individually, and the Berwind Company. The agreement recited that the Berwind Company had "advanced" to the trustees the sum of $125,525.15 to enable them "to purchase" the securities enumerated on a list attached from the Trust Company.[5] The agreement provided that the trustees should liquidate the securities and apply the proceeds with any income

which had accrued to the payment of the sum of $125,525.15 advanced by the Berwind Company, with interest. The contract further stipulated that when the sum due the Berwind Company had been paid with interest, any balance remaining from the sale of the securities and the income from them, was to be paid to Berwind, Creighton and Fisher in proportion to their several interests in the obligation which they assumed by the agreement to reimburse the Berwind Company. It was agreed further, if the amounts received from the liquidation of the securities with the income from them was insufficient to repay the Berwind Company the sum advanced by it with interest, that Berwind, Creighton and Fisher would pay any balance according to the following percentages; viz., Berwind, 27.78%, Creighton, 16.66% and Fisher, 27.78%. Finally the agreement provided that the liquidation of the securities was to be completed by the trustees no later than August 26, 1934 unless the Berwind Company consented to an extension.

On August 26, 1934, the parties entered into another agreement amending and extending the prior agreement. The second agreement provided that any money received by Berwind, Creighton and Fisher as stockholders or as depositors in the Trust Company, which was then in course of liquidation, should "be held" by the Berwind Company as additional security for the payment of obligations of the three individuals named to reimburse the Berwind Company.

In 1940 the Berwind Company notified the trustees to sell all of the securities then in their possession and pay the proceeds to the Berwind Company. $47,394.78 was realized from these sales. The trustees paid $45,000 to the Berwind Company but retained the balance to cover expenses. The sum of $45,000 constituted the entire amount realized by the Berwind Company from the sale of the securities.

Thereafter, Berwind received $5,549.10 from the liquidation of the Trust Company; Creighton received $1,508.32 and Fisher received $6,280.14. These sums also were paid to the Berwind Company.

In 1940 on receipt of bills sent by the Berwind Company, Berwind and Creighton's estate paid respectively to the Berwind Company the sums of $16,155.52 and $11,-

---

[5] These were the securities referred to in the correcting resolution as having been bought by the Berwind Company.

508.20. The bill sent to Berwind had the following notation.[6]

The Commissioner found that the income received by the trustees was $8,407.60 in 1936 and $4,466.97 in 1937 and treated Berwind, Creighton and Fisher as adventurers in a joint enterprise in respect to the securities, and considered Berwind and Creighton as the equitable owners of the securities as we have already indicated. The Commissioner accordingly included in his notice of income-tax deficiency to Berwind 38.4658% of $8,407.60 or the sum of $3,234.05 for 1936, and the sum of $1,718.26 for 1937. Similarly the Commissioner included in his deficiency notice to Creighton's estate 23.-0684% of $8,407.60 or the sum of $1,939.50 for 1936 and the sum of $1,030.45 for 1937.[7]

■ The Board sustained the Commissioner and held that the income was taxable to Berwind and Creighton.[8] We think that the Board's decision was correct for the reasons that follow.

The Board found that Creighton, Berwind, and Fisher were " * * * desirous of strengthening the financial condition of the Trust Company, [and therefore] entered into a plan for the acquisition of this block of securities at its original cost from the Trust Company, thereby repairing the capital impairment of that company to the extent of approximately $125,000." Viewing the transactions in this light, the Board concluded that the "advance" and payment of $125,000 by the Berwind Company did not constitute a purchase of the stock so as to make the Berwind Company the equitable owner. The Board considered the Berwind Company a creditor of Berwind, Creighton and Fisher and found that the agreements of November 23, 1931, and August 26, 1936 were effected in order to protect the Berwind Company as a creditor. Such a view is justified by the facts. Berwind and Creighton, and probably Fisher as well, were interested in the welfare of the Trust Company. The record shows no like interest on the part of the Berwind Company in the Trust Company. We cannot believe that the Berwind Company purchased stocks at twice their market value for its own account. The elaborate guarantees against loss to the Berwind Company represented by the agreements of November 23, 1931, and August 26, 1934, clearly negative such an interpretation of the transaction. Any profits[9] from the sale of the securities belonged to the guarantors. The Berwind Company simply "advanced" $125,-525.15.

The petitioners assert, however, that the Board did not decide the cases on their merits but merely held that the petitioners had not sustained the burden of proof in overcoming the Commissioner's ruling. This is true but the Board's position is none the less correct. The appellants have not sustained the burden of overcoming the Commissioner's ruling. As a matter of fact the transactions have all the indicia of having been entered into by Berwind and Creighton to relieve the Trust Company in which they were interested of an embarrassing situation. The Berwind Company made what was in substance a loan and looked to the guarantors for repayment.

■ It is a well settled rule of tax law that the substance of transactions will prevail over form, United States v. Phellis, 257 U.S. 156, 42 S.Ct. 63, 66 L.Ed. 180; Gregory v. Helvering, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596, 97 A.L.R. 1355. See, also, Grif-

---

[6] "Note: It is agreed that payment of this bill will fully discharge all obligations of this Guarantor under the stated agreement, with the exception of those attaching to his proportionate share of the sum of $2,394.78 which, as shown on the attached statement, has been withheld by the Trustees pending final settlement of certain Federal Income tax questions."

[7] The asserted deficiencies are as follows:

Berwind 1936 $2,256.50 1937 $936.81
Creighton 1936 475.59 1937 237.00

[8] A subsidiary question involved was whether the amounts received by the petitioners from the liquidation of the Trust Company in 1936 and paid by them to Berwind Company pursuant to the second agreement were proper deductions from the gross incomes of the taxpayers in that year. The Board held that the transactions were not closed transactions in 1936 and that the deductions could not be allowed. The petitioners do not seek to review the Board's decision on this point.

[9] No profit was really expected. See paragraph A(1) of the agreement of November 23, 1931 which provides in part that "The Trustees covenant and agree * * * To proceed to liquidate the said stocks and securities in such manner as, in their best judgment, shall result in a minimum loss thereon." See also the first sentence of paragraph A(1) of the Agreement of August 26, 1934.

fiths v. Commissioner, 308 U.S. 355, 60 S.Ct. 277, 84 L.Ed. 319; Bassick v. Commissioner, 2 Cir., 85 F.2d 8, certiorari denied 299 U.S. 592, 57 S.Ct. 120, 81 L.Ed. 436.

The decisions of the Board will be affirmed.