## PAXSON v. COMMISSIONER OF INTERNAL REVENUE.

### No. 8613.

Circuit Court of Appeals, Third Circuit.

Argued May 19, 1944.

Decided Sept. 11, 1944.

Herbert R. Voorhees, of Atlantic City, N. J. (Voorhees & Voorhees, of Atlantic City, N. J., on the brief), for petitioner.

S. Dee Hanson, of Washington, D. C. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and Robert N. Anderson, Sp. Assts. to Atty. Gen., on the brief), for appellee.

Before DOBIE and McLAUGHLIN, Circuit Judges, and KALODNER, District Judge.

KALODNER, District Judge.

This is a petition to review the decision of the Tax Court. The question involved is whether commissions "received" by petitioner, under agreement with the American Oil Company, during the years 1936, 1937 and 1938, constituted taxable income to him or to the Albany Service Station, Inc. The facts as found by the Tax Court are as follows (2 T. C. 819):

The petitioner, Joseph A. Paxson, is the treasurer and general manager of Albany

Service Station, Inc., a corporation of the State of New Jersey (hereinafter referred to as the Albany Company) which was engaged during the taxable years in selling gasoline and other petroleum products at wholesale and retail in Atlantic City. A minority of the Albany Company's outstanding capital stock of $5,000 was owned by the petitioner and the remainder was owned by the petitioner's wife, Emma Paxson, who was president of the Albany Company, and by the petitioner's four children, his sister, and his brother-in-law. The Albany Company carried on its business and did its banking in its own name, and kept regular books of account and a minute book of proceedings of its directors and stockholders. The petitioner, as general manager, had exclusive charge of the company's business and received a salary of $8,500 per annum for his services.

On March 12, 1934, the Richfield Oil Corporation (hereinafter referred to as the Richfield Company) appointed the Albany Company as its agent for the sale of gasoline in Atlantic City and vicinity. The contract was to terminate on March 11, 1937 and was to be automatically renewed from year to year thereafter for a period of five years unless and until one of the parties gave at least 30 days' written notice of its intention to terminate on the then expiring year, but the Richfield Company reserved the right to terminate it at any time. The Richfield Company was to deliver gasoline to the Albany Company on consignment, for sale by the latter at prices fixed by the Richfield Company, and the Albany Company was to receive a stated commission on each gallon sold. The gasoline was to be delivered to the Albany Company at the Richfield bulk storage plant at Absecon, New Jersey, and the trucks and labor necessary for the operation of the agency were to be furnished by the Albany Company. The contract provided that the Albany Company should *give its exclusive time and attention to the sale of Richfield products and that it should not without the written consent of the Richfield Company, sell, deal in, market, or distribute, directly or indirectly, petroleum products, other than those sold, marketed, or distributed by the Richfield Company.*

Just prior to August 1, 1935, the petitioner learned that condemnation proceedings were to be instituted by the Pennsylvania Railroad Company against the property on which the Richfield bulk plant was sit-

uated, and, anticipating that this might result in a temporary suspension of operations by the Richfield Company in that location, and in order to assure the Albany Company of a continuous supply of gasoline, he entered into negotiations with the American Oil Company (hereinafter referred to as Amoco), for the appointment of the Albany Company as an agent for the sale of Amoco's gasoline and other petroleum products. Amoco had knowledge of the Albany Company's contract obligation to deal exclusively in Richfield products, and because of such obligation and of Amoco's desire to avoid any litigation or controversy with the Richfield Company, it declined to enter into any agency agreement with the Albany Company. However, the negotiations resulted in the execution on August 1, 1935, of a contract between Amoco and the petitioner individually, designated as a "commission peddler agency contract."

Under the contract of August 1, 1935, the petitioner was designated as the "Agent" of Amoco for the purpose of selling and hauling from Amoco's bulk plant at Atlantic City gasoline and other Amoco petroleum products, and petitioner was to furnish an employee fidelity bond. The contract was to continue from August 3, 1935, until terminated on written notice by either party. The petitioner was to haul all gasoline and other products from the bulk plant premises of Amoco for the purpose of re-sale to customers procured by him within such territory as Amoco might from time to time designate, and he was to give his exclusive time and attention to his employment as the agent of Amoco and to operate and make all sales in strict compliance with its rules and regulations. The petitioner was to make all sales at prices and upon terms designated by Amoco and he was to *settle daily* for all cash sales and to remit daily for all other sums received for the account of Amoco. The petitioner was not to extend any credit, or make any sales at a discount, credit or otherwise, without the written authority of Amoco, and all unauthorized sales, or credits, for an amount greater than authorized, were to be for his own account. The petitioner was to *furnish, maintain and operate, at his own expense, the trucks necessary for servicing customers, and to carry liability insurance thereon. All trucks were to carry the name of The American Oil Company and the Agent's name and the words "Com-*

mission Peddler Agent" were to be shown on the cab of the truck. All persons employed by petitioner in connection with the performance of his duties under the contract were to be his employees and Amoco was not to be responsible for any claims or demands for wages, or otherwise, growing out of or pertaining to their employment. Amoco was to pay the petitioner daily on the sale and actual delivery by him of products from the bulk plant of Amoco to buyers made on that day, a commission of two cents per gallon on the various grades of Amoco's gasoline, and commissions of varying amounts on lubricating oils, greases, and specialties.

This contract provided against assignment without written consent of Amoco, and also stated that the agreement constituted all arrangements between the parties and that it was not subject to change or modification without an agreement in writing signed by petitioner and Amoco.

Prior to 1936, the Albany Company was purchasing large quantities of Amoco's gasoline on credit, through petitioner as Amoco's Agent, and although Amoco believed that the petitioner was personally liable for the Albany Company account, under the provisions of his agency contract of August 1, 1935, prohibiting sales of its products by petitioner on credit, without Amoco's consent, it demanded that he execute a separate instrument *guaranteeing* the account of the Albany Company. The petitioner on October 28, 1936, executed an instrument wherein, in consideration of the sales theretofore made, and to be made from time to time by Amoco to the Albany Company on credit, the petitioner guaranteed payment of the account of the latter to the extent of $7,500.

The contract of August 1, 1935, was in effect until September 14, 1938. While that contract was in effect all sales of Amoco's gasoline and other products were made *by petitioner to the Albany Company and were hauled in the trucks of the Albany Company and the latter paid all the expenses of such hauling, including maintenance of the trucks, wages of employees, and liability insurance.* Amoco at the end of each month issued its check for commissions due on sales made under the contract of August 1, 1935. *The checks were payable to the order of the petitioner, but he did not cash any of them personally or clear any of them through the bank. The bookkeeper of the Albany Company, after* verification of the amount of commissions due, endorsed the monthly check to the Albany Company, applied it as payment on the account of the latter for gasoline purchased from Amoco, and returned the check to the local office of Amoco.

In September, 1938, Amoco discontinued the practice of drawing checks for the commissions and accepting them as payment on the account of the Albany Company. On September 14, 1938, Amoco entered into a contract with the Albany Company in which Amoco agreed to sell and deliver to the Albany Company, on stated terms, the latter's resale requirements of Amoco's gasoline and other products.

The petitioner was never authorized by the Albany Company by written instructions or formal corporate resolutions to enter into the agreement of August 1, 1935, on its behalf and during the time it was in effect petitioner did not assign that agreement to the Albany Company in writing, nor did he obtain consent of Amoco to make such an assignment.

In its returns for the years 1936, 1937 and 1938, the Albany Company reported net income for those years in the amounts of $2,851.28, $12,550.91, and $6,001.37, respectively. The gross income reported in such returns included, among other items, "discounts on purchases" in the amounts of $16,319.64 for 1936, $25,642.12 for 1937, and $23,057.48 for 1938.

The Commissioner of Internal Revenue, in determining the deficiency, stated that "Commissions of $16,319.64, $25,642.12 and $23,057.48, received from the American Oil Company for the years 1936, 1937, and 1938, respectively, are held to be taxable to" the petitioner, and he accordingly increased the petitioner's income by those amounts. The Tax Court upheld the action of the Commissioner on the grounds that in making the contract with Amoco, Paxson was not acting as agent of the Albany Company, and that the contended assignment of the contract to Albany Company was void and ineffective.

We are of the opinion that the facts in this case lead to a legal conclusion directly opposed to that reached by the Tax Court.

Although petitioner, Paxson, personally entered into a contract with Amoco, the facts are that he did nothing to carry out the detailed duties and obligations stated in the agreement. From the very begin-

ning, all the terms of the contract were performed by and between Albany Company and Amoco; it was Albany Company, and not Paxson, which devoted exclusive time and attention to the distribution of Amoco products; settlements were not made daily with Paxson, but monthly with Albany; Paxson did not "furnish, maintain and operate, at his own expense, the trucks necessary for servicing customers", nor did he service customers, nor carry liability insurance; the trucks did not carry Paxson's name, and he did not employ the persons necessary to carry out the terms of the contract. All these duties were performed by the Albany Company.

The method of "payment" of commissions to Paxson was merely token. Checks were made out to Paxson, but were delivered by an Amoco representative to Albany; the computations were checked on Albany's books, and an Albany employee, with Paxson's consent, endorsed the check and returned it to Amoco, but Albany received the benefit of these "commissions" by deducting them from the total amount due Amoco for gasoline and petroleum products actually distributed by Albany.

The substance of the matter is that Albany took over the contract and performed the duties thereunder, while Paxson continued as general manager of Albany. The arrangement was obviously designed to enable Albany and Amoco to enter into and continue business relations without patently violating the contract the Albany Company had with the Richfield Company.

The evidence and the facts found by the Tax Court fully support petitioner's contention that his contract with Amoco was turned over to Albany for its exclusive use. Furthermore, the evidence and facts warrant the conclusion that there was an assignment of the contract. It must be noted the Tax Court did not find that the facts were insufficient to establish an assignment, but it concluded as *a matter of law* that there was no assignment, premising its determination on its fact finding that there was no written assignment of the contract or written consent of Amoco thereto as called for by the contract. Significantly, the Tax Court did not find as a fact that there was no oral assignment. Indeed, the record is devoid of evidence to the contrary.

■ In view of the fact that this contract was executed and performed in New Jersey, the law of that state controls. New Jersey follows the Restatement view that contracts may be assigned orally. Restatement, Contracts, Sec. 157; Jemison v. Tindall, 1916, 89 N.J.L. 429, 99 A. 408; Parenteau v. Benjamin, 1935, 117 N.J.Eq. 450, 176 A. 334. Moreover, the provision in the contract requiring written consent of Amoco would not a fortiori render an oral assignment "ineffectual and void". Cases in New Jersey are in accord with the Restatement view that such a provision operates for the benefit and protection of the obligor alone, and other interested parties cannot take advantage of it. Restatement, Contracts, Sec. 176; Metropolitan Life Insurance Co. v. Poliakoff, 1938, 123 N.J.Eq. 524, 198 A. 852; Burnett v. Mayor, etc., of Jersey City, 1879, 31 N.J.Eq. 341. It is therefore apparent that the legal impediments premising the Tax ·Court's determination of this issue were non-existent.

■ The Tax Court also noted, in support of its conclusion, that "there is no evidence whatever to show that Amoco, subsequent to the execution of the contract, consented orally to the arrangement which the petitioner claims he made with the Albany Co. respecting the contract." On that score, in addition to the petitioner's uncontradicted testimony that there was both an oral assignment to the Albany Company and an oral consent to such assignment by Amoco, the undisputed evidence reveals that during the negotiations between the parties, it was known to Amoco, or its agents, that Paxson had no intention of fulfilling the obligation of the contract, and that the Albany Company alone was expected to perform. Moreover, during the term of the contract, for the three years in dispute, the Albany Company alone carried out the contract. Amoco's long continued business relationship under the contract with the Albany Company operates as a manifestation of assent, and corroborates the petitioner's testimony that there was an oral consent to the assignment by Amoco. The continued business relationship under the circumstances constitutes a waiver, on the part of Amoco, of the requirement of written consent. It is a well-settled principle of contract law that assent need not be express, but may be implied from acts and circumstances. New Jersey law is in accord. Restatement, Contracts, Sec. 21, and New Jersey Annotations thereto; see also 1 Williston, Contracts (1936 Ed.), Sec. 22A.

776

■ The facts as found lead inevitably to the conclusion that the "commissions" are taxable to the Albany Company. The test is clearly set out in Helvering v. Horst, 1940, 311 U.S. 112, at page 119, 61 S.Ct. 144, at page 148, 85 L.Ed. 75, 131 A.L.R. 655: "The dominant purpose of the revenue laws is the taxation of income to those who earn or otherwise create the right to receive it and enjoy the benefit of it when paid. See, Corliss v. Bowers, supra, 281 U.S. 376, 378, 50 S.Ct. 336, 74 L.Ed. 916; Burnet v. Guggenheim, 288 U.S. 280, 283, 53 S.Ct. 369, 370, 77 L.Ed. 748."

As between Paxson and the Albany Company, it is the latter that meets the test. Albany Company performed the contract and earned the commissions. The fact is, the Albany Company earned the income and obtained the benefits.

The fact that the Albany Company required the Amoco contract in order to operate its business profitably supports the conclusion that the arrangement was not made with intent to evade or shift the tax burden. The instant case is clearly not one of mere assignment of income earned or to be earned by the assignor, and there is no attempt to "separate tree and fruit." See Schroder v. Commissioner, 5 Cir., 1943, 134 F.2d 346; Helvering v. Eubank, 1940, 311 U.S. 122, 124, 61 S.Ct. 149, 85 L.Ed. 81; Helvering v. Horst, supra; and cases collected in 131 A.L.R. 661.

■ Statutes authorizing tax refunds and suits for their recovery are predicated upon equitable principles. Interwoven Stocking Company v. United States of America, 3 Cir., 144 F.2d 768.

■ Taxation deals with realities not semblances; with substance not form. As we stated in Berwind v. Commissioner of Internal Revenue, 137 F.2d 451, 453, "It is a well settled rule of tax law that the substance of transactions will prevail over form, * * *." The basis of the doctrine is the common-sense view that taxation "is an intensely practical matter."

· ■ Finally, it is contended on behalf of the Commissioner that, on what amounts to the principle of Dobson v. Commissioner, 1943, 320 U.S. 489, 64 S.Ct. 239, the Tax Court may not be reversed here. However, that case is inapplicable to the instant situation, since we are reversing the Tax Court solely on errors of law.

The decision of the Tax Court is reversed.