THORNLEY et al. v. COMMISSIONERS OF INTERNAL REVENUE.

No. 8548.

Circuit Court of Appeals, Third Circuit.

Argued Oct. 6, 1944.

Decided Jan. 15, 1945.

GOODRICH, Circuit Judge, dissenting.

Frederick E. S. Morrison, of Philadelphia, Pa. (Calvin H. Rankin and Drinker, Biddle & Reath, all of Philadelphia, Pa., on the brief), for petitioners.

Robert Koerner, of Washington, D. C. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and A. F. Prescott, Sp. Assts. to Atty. Gen., on the brief), for respondent.

Before GOODRICH and McLAUGHLIN, Circuit Judges, and KALODNER, District Judge.

KALODNER, District Judge.

This is a petition to review the decision of the Tax Court. It involves a deficiency in income taxes for the year 1937. The petitioner was a member of a co-partnership trading as N. W. Ayer & Son, an advertising agency. On January 1, 1927, he held a 10% interest in the partnership. On May 1, 1929, the business and assets of the partnership were transferred to a corporation, N. W. Ayer & Son, Incorporated, pursuant to a contract between the partners and the newly-formed corporation, and thereupon the corporation's shares of stock were issued to the partners in proportion to their respective partnership interests. On January 4, 1937, the petitioner sold his stock in the corporation.

It is agreed that under the provisions of the Revenue Act of 1928, 26 U.S. C.A. Int.Rev.Acts, page 351 et seq., no gain or loss was recognized from the exchange

on May 1, 1929, and that the corporate stock received from the exchange takes the same base as the partnership interests. Accordingly the petitioner was entitled, under Section 117(c) (1) of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Acts, page 874, to tack onto the period during which he held the stock the additional period during which he had held the property exchanged for the stock. Thus, as in Kessler v. United States, 3 Cir., 124 F.2d 152, 154, where the taxpayer was also first a partner in N. W. Ayer & Son and then a stockholder in N. W. Ayer & Son, Incorporated, the single question here is "What was the property exchanged? Was it the petitioner's partnership interest, as he contends, or was it his interest in the assets of the partnership, as the government urges?" [1] The answer must be found in the available records chronicling the transaction.

The facts as found by the Tax Court, are substantially as follows. 2 T.C. 220.

N. W. Ayer & Son, a co-partnership, conducted the business of an advertising agency for many years prior to January 1, 1923. Between January 1, 1923, and January 1, 1927, the taxpayer acquired various interests in the partnership by purchase so that on January 1, 1927, he owned a 10% interest. It is stipulated that the 10% interest had a cost basis of $271,949.-15 for purposes of determining gain or loss.

From December 29, 1926, the partnership operated under articles of co-partnership dated December 29, 1926, which were in effect from January 1, 1927, until the partnership was dissolved in 1929.

On April 23, 1929, the partners decided to incorporate the advertising business then conducted by them through the partnership, under the terms of an agreement executed on April 23, 1929, by all of the partners. The agreement provided that a Delaware corporation should be organized prior to May 1, 1929, to be known as N. W. Ayer & Son, Incorporated, and to be registered in Pennsylvania for the purpose of conducting business in that state. The agreement provided, inter alia, as follows:

"4. Partners agree, in respect to the undistributed profits which were standing to their respective credits on the partnership books at the close of business on December 31, 1928, that such balances thereof as remain undistributed at the close of business on April 30, 1929, shall for the time being be loaned by Partners to the corporation which shall pay for the use of the same interest at the rate of 6% per annum.

\* \* \* \* \* \*

"6. On May 1st, 1929, or as soon thereafter as possible but as of May 1st, 1929, the entire assets of N. W. Ayer & Son (of Philadelphia) including all the accounts, contracts, books, claims, causes of action, good will, and all rights of every kind and nature, and all property, real, personal and mixed to which said partnership is then legally or equitably entitled shall be conveyed, assigned, set over, and transferred to said corporation subject, however, to all the partnership liabilities which said corporation shall expressly assume.

"7. In exchange for the assets so to be transferred and in consideration of the agreements of the Partners as hereinafter set forth, there shall be issued to the respective Partners in full payment for their respective interests in said assets, full paid and non-assessable common capital stock of said corporation as follows:

| Name | Number of shares |
| --- | --- |
| Wilfred W. Fry | 456,637 |
| William M. Armistead | 76,106 |
| James M. Mathes | 76,106 |
| Adam Kessler, Jr. | 76,106 |
| George H. Thornley | 76,106 |
| Total | 761,061 |

[1] If it was the petitioner's partnership interest (held since January 1, 1927) under Kessler v. United States, supra, he would be entitled to tack on to the approximate 8 years period for which he held the corporate stock the 2 years he had held his 10% interest in the partnership and thus would compute his gain on a 30% basis. If it was his interest in the assets of the partnership he would only be entitled to tack on to the 8 years period such periods for which the partnership had held the specific assets conveyed to the corporation, and as to the balance of his interest such balance would be taxable on a 40% basis under Sec. 117(a) of the Revenue Act of 1936.

It may be noted at this point that Sec. 117 has been amended by Sec. 150(c) of the Revenue Act of 1942, 26 U.S.C.A. Int.Rev.Code, § 117(b), so that at present the percentage of the gain or loss recognized upon the sale or exchange of a capital asset is 100% if the capital asset has been held for not more than 6 months and 50% if the capital asset has been held for more than 6 months.

"11. The partnership N. W. Ayer & Son (of Philadelphia) shall be dissolved and the Articles of Partnership terminated as of April 30th, 1929."

The corporation, N. W. Ayer & Son, Incorporated, was organized on April 24, 1929, with an authorized capital of 1,000,-000 shares without nominal or par value, for the purpose of engaging in and carrying on the general advertising business which had been conducted by N. W. Ayer & Son, the partnership.

Pursuant to a resolution adopted at a meeting of the directors of the corporation held on April 29, 1929, the corporation, through its president, ratified, confirmed, and adopted the agreement of April 23, 1929, and agreed to do all the acts on its part which were called for by the agreement. Such ratification by the corporation was made by an execution of the agreement on April 29, 1929, by the corporation, whereby the corporation became a party to the agreement of April 23, 1929.

On May 1, 1929, all the assets and property of every kind and nature whatsoever, which were previously owned and held by N. W. Ayer & Son, the partnership, were transferred to N. W. Ayer & Son, Incorporated, subject, however, to all outstanding liabilities and indebtedness of the partnership which were assumed by the corporation. On May 1, 1929, a bill of sale was executed by the five individuals who were co-partners in the firm of N. W. Ayer & Son. The bill of sale provided as follows, in part:

"Know All Men by These Presents, that we, Wilfred W. Fry, William M. Armistead, James M. Mathes, Adam Kessler, Jr., and George H. Thornley, co-partners trading as N. W. Ayer & Son, for and in consideration of the sum of One Dollar and other good and valuable considerations moving unto each of us from N. W. Ayer & Son, Incorporated, a corporation organized under the laws of the State of Delaware, all as more fully set forth in a certain Agreement dated April 23rd, 1929, providing for the incorporation of the partnership, N. W. Ayer & Son, the receipt whereof is hereby acknowledged, Do hereby grant, sell, assign, transfer and deliver unto the said N. W. Ayer & Son, Incorporated, the entire plant, property, machinery, equipment, fixtures, business and good will of the N. W. Ayer & Son partnership including all book accounts and accounts receivable outstanding, contracts, copy-rights, trade marks, claims, causes of action, and all rights and all assets and property of any kind or nature whatsoever belonging or appertaining to the said partnership and to the business thereof, subject, however, to all the adjustments to be made as more fully set forth·in said Agreement of April 23rd, 1929, and further subject to all outstanding liabilities and indebtedness of said partnership, which the said corporation, N. W. Ayer & Son, Incorporated, hereby assumes, to have and to hold said property to the said N. W. Ayer & Son, Incorporated, and its successors and assigns, to their own use and behoof forever."

On May 1, 1929, N. W. Ayer & Son, Incorporated, issued 761,061 shares of its full paid and non-assessable common capital stock to the respective partners in proportion to their respective partnership interests. The taxpayer received 76,106 shares of this stock from the corporation for his interest in the partnership.

It has been stipulated by the parties that:

"Under the provisions of the Revenue Act of 1928, no gain or loss was recognized to the partnership or to the partners as individuals upon the transactions hereinabove set forth, and under that act, the basis to the Petitioner, (George H. Thornley) for determining gain or loss upon the subsequent sale of the stock of N. W. Ayer & Son, Incorporated, which he received, was the same basis as that of his partnership interest, namely, $271,949.46."

On January 4, 1937, the taxpayer owned 71,356 shares of N. W. Ayer & Son, Incorporated, capital stock, which he sold on that date, realizing therefrom a capital gain under Section 117 in the amount of $261,659.60.

In the joint return for 1937, the taxpayer treated capital stock as an asset held for more than ten years, adding to the period during which he had held the stock itself the period during which he had owned an interest in the partnership, N. W. Ayer & Son, so that the entire period extended from January 1, 1927, to January 4, 1937. Under this theory the taxpayer believed that only 30% of the capital gain should be recognized under Section 117(a) of the Revenue Act of 1936.

The Commissioner added to taxable income the sum of $24,060.76, which represented increase in the capital gain on the sale of the stock. In the statement at-

tached to the notice of deficiency the following explanation was given:

"The gain has been computed on the basis of the percentages of capital assets and non-capital assets of the corporation of December 31, 1927, and the taxable gain has been computed on the basis of the period each class of assets is presumed to have been held."

A summary of the computation follows:

| | Assets 12/31/27 | Percent |
|---|---|---|
| Capital | $ 1,348,687.27 | 8.045573 |
| Non-Capital | 15,414,409.49 | 91.954427 |

| Total gain as reported | Applicable percentage | Amount | Period Held |
|---|---|---|---|
| $261,659.60 | 8.045573 | $ 21,052.01 | Over 10 years |
| 261,659.60 | 91.954427 | 240,607.59 | Over 5 years but not over 10 years |

| Amount of gain | Percent | Taxable Gain |
|---|---|---|
| $ 21,052.01 | 30 | $ 6,315.60 |
| 240,607.59 | 40 | 96,243.04 |
| Total taxable gain | | $102,558.64 |
| Taxable gain reported | | 78,497.88 |
| Additional taxable gain | | $ 24,060.76 |

In its opinion the Tax Court concluded that in 1929 the partners conveyed to the corporation the assets of the partnership, and not their individual partnership interests in the partnership, in exchange for the corporate stock issued to the taxpayer and sold by him in 1937. Therefore, in determining the length of time for which the taxpayer held the property which he disposed of by selling the stock in 1937, the Tax Court held that the taxpayer is entitled to tack on to the holding period of the stock only the period during which he had an interest in the specific property of the partnership. The taxpayer having introduced no evidence as to the periods for which the partnership assets were held, the Tax Court held that the Commissioner's determination could not be set aside.

## Discussion.

The issue here arises under Section 117 (c) (1) of the Revenue Act of 1936, which provides as follows:

"In determining the period for which the taxpayer has held property received on an exchange there shall be included the period for which he held the property exchanged, if under the provisions of section 113, the property received has, for the purpose of determining gain or loss from a sale or exchange, the same basis in whole or in part in his hands as the property exchanged."

Under this section, tacking-on is permissible if the "property received on an exchange * * * has * * * the same basis in whole or in part * * * as the property exchanged." Petitioner vigorously urges that "the question is not whether the corporation *acquired* the partnership interest, but what was the property Mr. Thornley *exchanged* for the stock of the corporation." In doing so the petitioner pointed out that in Kessler v. United States, supra, [124 F.2d 154], we stated:

"* * * the verb 'exchange' is not restricted in meaning to the idea of an interchange but *includes as well the thought of merely giving up something in consideration of the receipt of something else. Thus the plaintiff might have given up his partnership interest in exchange for the stock even though that interest as such did not pass to the corporation."* (Emphasis supplied)

In the determination of the problem here, it is only necessary to apply the principles of law as stated in Kessler v. United States, supra.

Preliminarily it must be pointed out that in that case there was an appeal by the Government from a judgment for the plaintiff in a suit brought in the District Court for the recovery of income taxes al-

leged to have been erroneously assessed and collected.

Our finding against the taxpayer was based upon our conclusion that he had failed to meet the burden of proof imposed upon one seeking the recovery of taxes already paid.

In the Kessler case the only factual testimony as to what occurred in the transition from partnership to corporation was a stipulation which read as follows:

"On or about May 1, 1929, a corporation was formed known as N. W. Ayer & Son, Inc. That corporation received the property formerly held by the partnership. Plaintiff herein received in 1929, in exchange for property turned over to the corporation, 76,106 shares of stock of N. W. Ayer & Son, Inc."

While the trial court found as a fact that "On May 21, 1929 the *partners* formed a corporation to which they *conveyed the partnership assets,* taking stock in proportion to their respective interests in the partnership", we held the trial court's finding to be a "conclusion * * * based upon * * * (a) premise—not supported by the evidence." We further ruled that "the sole evidence upon which the petitioner relied to overcome the presumption that the Commissioner's assessment was correct was the stipulation above set forth" and that "it is only by producing evidence which established the factual premises adopted by the District Court that the plaintiff could overcome the presumption * * * and meet the burden of proof which the law imposes upon every taxpayer who seeks to recover on taxes already paid."

■ In the instant case the nature and facts of the transaction must be determined from the various writings which chronicled the transaction and the transition from partnership to corporation. It is well-settled that "Judicial questions also include questions of construction of documents other than statutes and the writings of administrative agencies. These documents include contracts, including city ordinances embodying the terms of a contract with a utility, tariffs, the rules of a carrier, wills, newspaper articles, and treaties." 1 Von

Baur, Federal Administrative Law (1942) Sec. 473.

■ Thus the function of the Tax Court, as of this Court, was to construe the nature of the transaction and such construction is a matter of law.

We are of the opinion that the Tax Court erred as a matter of law in determining that what occurred in this transaction was an exchange of an interest in the assets of the partnership and not the exchange of a partnership interest.

■ As was pointed out in Helvering v. Tex-Penn Co., 300 U.S. 481, 491, 57 S.Ct. 569, 574, 81 L.Ed. 755, "The ultimate finding (of the Board of Tax Appeals) is a conclusion of law or at least a determination of a mixed question of law and fact. It is to be distinguished from the findings of primary, evidentiary, or circumstantial facts. It is subject to judicial review and, on such review, the court may substitute its judgment for that of the Board. Helvering v. Rankin, ubi supra. [295 U.S. 123, 55 S.Ct. 732, 79 L.Ed. 1343]"[2] Accordingly, Dobson v. Commissioner of Internal Revenue, 320 U.S. 489, 64 S.Ct. 239, is not applicable here.

■ Petitioner's exhibit No. 9, the agreement of April 23, 1929, providing for the incorporation of the business of N. W. Ayer & Sons; petitioner's exhibit No. 10, the excerpts from the "Minutes of First Meeting of the Board of Directors of N. W. Ayer & Son, Incorporated"; and petitioner's exhibit No. 13, the "Bill of Sale," clearly demonstrate that what occurred here was a sale of the partnership interests and not the interest of the partners in assets of the partnership. The agreement of April 23, 1929, providing for the incorporation of the business, provided in paragraph 6 as follows:

"On May 1st, 1929, or as soon thereafter as possible but as of May 1st, 1929, *the entire assets of N. W. Ayer & Son* (of Philadelphia) including all the accounts, contracts, books, claims, causes of action, good will, and all rights of every kind and nature, and all property, real, personal and mixed *to which said partnership is then legally or equitably entitled* shall be con-

---

[2] In Helvering v. Tex-Penn Co., 300 U. S. 481, 57 S.Ct. 569, 576, 81 L.Ed. 755, the Supreme Court found that there was "nothing in the circumstantial facts found or in the evidence to support the Board's conclusion that Kirkland, Lantz, and Wrather received from Transcontinental any cash for their stock in Tex-Penn," and accordingly refused to sustain that finding.

veyed, assigned, set over, and transferred to said corporation subject, however, to existing mortgage encumbrances and to all the partnership liabilities which said corporation shall expressly assume." (Emphasis supplied)

From the above it is clear that the subject matter of the *direct* exchange between the partnership and the corporation was the partnership interest in the entire business and its physical assets, real and personal and good will *as a going concern.*

Petitioner's exhibit No. 10, excerpts from "Minutes of First Meeting of Board of Directors" provides in part as follows:

"Whereas, under date of April 23rd, 1929 William W. Fry, William M. Armistead, James M. Mathes, Adam Kessler, Jr., George H. Thornley, *co-partners trading as N. W. Ayer & Son* * * * entered into an agreement providing for the transfer *of all the assets of the partnership, N. W. Ayer & Son* to this corporation, * * *." (Emphasis supplied)

It is significant that in these "Minutes" the conveying partners were described as acting in their capacity as "copartners trading as N. W. Ayer & Son" and further that the subject matter of the transaction was "the assets of the partnership."

Petitioner's exhibit No. 13, the Bill of Sale from "N. W. Ayer & Son, a partnership to N. W. Ayer & Son, Incorporated," also sheds important light on the nature of the transaction. It will be noted that in the Bill of Sale the sellers identify themselves as *"co-partners trading as N. W. Ayer & Son"* and that the subject matter of the sale is "the entire plant, property, machinery, equipment, fixtures, business and good will *of the N. W. Ayer & Son partnership* * * * and all assets* and property of any kind or nature whatsoever *belonging to* or appertaining *to the said partnership* * * *." And finally that the sale is "* * * subject to all outstanding liabilities and indebtedness *of said partnership* * * *." (Emphasis supplied)

Significant, too, is the fact that on May 1, 1929, N.W. Ayer & Son, the partnership, entered on its books of accounts the entries necessary to reflect the transfer of all its assets subject to its liabilities to the corporation, N. W. Ayer & Son, Incorporated, and to close the partnership books.

Further, on the same date, N. W. Ayer & Son, Incorporated, the corporation, entered on its books the entries necessary to open its books and reflect thereon the assets acquired from N. W. Ayer & Son, the partnership, and the liabilities of N. W. Ayer & Son, the partnership, which it, the corporation, assumed. These opening entries were preceded by the following statement:

"N. W. Ayer & Son, Incorporated, "Incorporated April 24, 1929

A Corporation organized and existing under the Laws of the State of Delaware.

"Began Business May 1, 1929, succeeding to the Advertising Business of N. W. Ayer & Son

"A Co-Partnership consisting of Wilfred W. Fry, William M. Armistead, James M. Mathes, Adam Kessler, Jr. and George H. Thornley."

The entire history of the transition from partnership to corporation is chronicled exclusively in the writings discussed, all of which were in evidence and not disputed.

The sum and substance of the issue to be decided here is then, as to whether the Tax Court's ultimate finding was a proper one. As already stated, that ultimate finding "is subject to judicial review and, on such review, the court may substitute its judgment for that of the Board (Tax Court)": Helvering v. Tex-Penn Co., supra. Further, as was held in the case cited, "The validity of the ultimate finding * * * is to be tested by what in fact was done rather than by the mere form of words used in the writings employed."

In United States v. Phellis, 257 U.S. 156, 168, 42 S.Ct. 63, 65, 66 L.Ed. 180, the rule was stated as follows:

"We recognize the importance of regarding matters of substance and disregarding forms in applying the provisions of the Sixteenth Amendment and income tax laws enacted thereunder. In a number of cases besides those just cited we have under varying conditions followed the rule. Lynch v. Turrish, 247 U.S. 221, 38 S.Ct. 537, 62 L.Ed. 1087; Southern Pacific Co. v. Lowe, 247 U.S. 330, 38 S.Ct. 540, 62 L.Ed. 1142; Gulf Oil Corporation v. Lewellyn, 248 U.S. 71, 39 S.Ct. 35, 63 L.Ed. 133."

In Tex-Penn Oil Co. v. Commissioner of Internal Revenue, 3 Cir. (affirmed in Helvering v. Tex-Penn Co., supra) 83 F.2d 518, 522 we said:

"* * * the rule is well settled that in determining tax liability, taxing authorities must look through form to fact and substance."

Again in Paxson v. Commissioner of Internal Revenue, 3 Cir., 144 F.2d 772, 776, we stated:

"Taxation deals with realities not semblances; with substance not form. As we stated in Berwind v. Commissioner of Internal Revenue, 3 Cir., 137 F.2d 451, 453, 'It is a well settled rule of tax law that the substance of transactions will prevail over form, * * *.' The basis of the doctrine is the common-sense view that taxation 'is an intensely practical matter.'"

In the instant case in support of its contention that the subject of the exchange was "the partnership assets," and not the partners' individual interest in the partnership, the Government urges that under the agreement of April 23, 1929, the corporation was to issue shares to the partners "in exchange for the assets (of the partners) so to be transferred"; that the Bill of Sale transferred "the partnership assets" and it "was supplemented by deeds and other conveyances of specific assets where such formalities were required." The theory of the Government is that "the plain effect of the documents was to transfer to the corporation the property formerly held by the partners as co-owners of a tenancy in partnership."

The Tax Court's finding was in accord with the Government's contention as stated.

█ In our opinion, however, applying the rule that "taxation deals with realities not semblances; with substance not form" the transaction is one of an exchange of partnership interests for corporate stock.

Simply stated, what happened here was an incorporation by the partners of their partnership business. The transition from partnership to corporation was accomplished by the transfer by the partners (acting in their identity as co-partners and as a co-partnership) of all of the assets of the partnership to the corporation with the partners receiving from the corporation shares of stock in proportion to their respective partnership interests. There was never at any time any liquidation of partnership assets nor was there any distribution of the partnership assets to the partners. Had the stock been issued by the corporation to the partnership in exchange

for their respective proportionate interest in the partnership, certainly no question could have been raised by even the most aggressive tax-collector. The fact that that was not done but that the corporate stock was issued directly to the partners, does not in any way change the nature or complexion of the transaction. In Raybestos-Manhattan, Inc. v. United States, 296 U.S. 60, 56 S.Ct. 63, 80 L.Ed. 44, 102 A.L.R. 111, pursuant to a consolidation agreement two corporations conveyed their property to a new corporation in return for shares of its corporate stock issued not to the two corporations but directly to their stockholders in proportion to their holdings in those corporations. Said the Court, in 296 U.S. at page 63, 56 S.Ct. at page 65:

"In the present case the generating source of the right to receive the newly issued shares of petitioner was the conveyance to it of the property of each of the corporations to be consolidated." (Emphasis supplied)

In the instant case "the generating source of the right to receive" the shares of the corporation was the conveyance to it of the property of the partnership.

The critical test is not whether the corporation technically acquired the "partnership interest" but, as was pointed out in Kessler v. United States, supra, whether the petitioner gave up "his partnership interest in exchange for the stock even though that interest as such did not pass to the corporation."

Here clearly the petitioner and his co-partners acting in concert gave up his partnership interest in exchange for the stock of the corporation.

Accordingly, under Kessler v. United States, supra, the petitioner is entitled to tack-on to the approximate eight year period for which he held the corporate stock, the more than two year period he had held his stock in the partnership and thus should be permitted to compute his gain on a 30% basis.

The Government has cited City Bank Farmers Trust Company v. United States, 47 F.Supp. 98, 97 Ct.Cl. 296 in which the Court of Claims held that when a partner sells his interest in a partnership business the holding period for purposes of Sec. 117(a) is to be measured not from the date of acquisition of the partnership interest, but from the date when the partnership acquired the specific partnership assets which

it owned at the date of sale of the interest. That ruling is in direct conflict with the view which we expressed in Kessler v. United States, supra, and we cannot subscribe to it.

In view of our disposition of the primary issue involved here it is unnecessary to discuss the other questions presented.

The decision of the Tax Court is reversed.

GOODRICH, Circuit Judge (dissenting).

The reason for differing in opinion with the majority of the Court in this case is not what is said by them, but what was said by the Supreme Court in reversing us in Commissioner of Internal Revenue v. Scottish American Investment Co., Ltd., 1944, 323 U. S. 119, 65 S.Ct. 169, 171. We were there warned that "The judicial eye must not in the first instance rove about searching for evidence to support other conflicting inferences and conclusions which the judges or the litigants may consider more reasonable or desirable." It was said, also, that "The factual pattern is too decisive and too varied from case to case to warrant a great expenditure of appellate court energy on unravelling conflicting factual inferences." If the nature of the problem in the case referred to was factual, it seems to me that it is no less so here. There, as here, both the Tax Court and we saw a batch of evidentiary facts which were not disputed in either tribunal. The Tax Court drew one conclusion from these facts; we drew another. We were told that we were not at liberty to do so. I think we are not here, either.