**UNITED STATES of America,
Plaintiff,**

v.

**WICHITA INDUSTRIES, INC., a corporation, et al., Defendants.**

**No. 72-474.**

United States District Court,
W. D. Oklahoma,
Civil Division.

June 28, 1974.

William R. Burkett, U. S. Atty., Oklahoma City, Okl., for plaintiff.

Cecil Cammack, Tulsa, Okl., for Cities Service.

Jerry A. Marcis, Oklahoma City, Okl., for Sohio.

J. D. DeBois, Duncan, Okl., for Wichita Industries, Inc. and ARO Equipment Co.

## MEMORANDUM OPINION

DAUGHERTY, Chief Judge.

This dispute involves two separate oil and gas leases on Indian lands in Stephens County, Oklahoma. The Court has jurisdiction herein pursuant to 28 U.S.C. § 1345 in that the United States initiated this civil action to enforce a decision of the Secretary of the Interior having to do with royalties owed by the lessees of said leases. The Defendants resist enforcement. The parties have submitted the case for decision on two Stipulation of Facts and Briefs.

The Plaintiff represents the interests of the Indian lessors and the Defendants are the lessess. The controversy arises from two "Oil and Gas Mining Leases Upon Lands Selected For Allotment" which were executed on Indian lands in 1920. The terms of the two leases are

the same. The parties are in disagreement about the payment of royalty under said leases on sales of casinghead gas made under contracts entered into in 1951 by lessees with Universal Gasoline Company (Universal).

The leases provide that they are subject to regulations of the Secretary of the Interior as then in existence or thereafter changed except if subsequent regulations alter the rates of royalty or payment thereunder they are inapplicable.

The parties agree the relevant portions of the oil and gas leases provide:

(Paragraph 2)

"The lessee hereby agrees to pay or cause to be paid to the Superintendent of the Five Civilized Tribes, Muskogee, Oklahoma, for the lessor, *as royalty, the sum of Twelve and one-half per cent of the gross proceeds of all crude oil extracted from said land, such payment to be made at the time of sale or removal of the oil.* * * * PROVIDED, * * * That in case of gas wells of small volume, or where the wells produce both oil and gas or oil and gas and salt water to such extent that the gas is unfit for ordinary domestic purposes, * * * the lessee shall have the option of paying *royalties upon such gas wells of the same percentage of the gross proceeds from the sale of gas from such wells as is paid under this lease for royalty on oil.* * * *" (Italics supplied)

(Paragraph 8)

"*This lease shall be subject to the regulations of the Secretary of the Interior, now or hereafter in force,* relative to such leases, all of which regulations are made a part and condition of this lease: PROVIDED, HOWEVER, that *no regulations made after the approval of this lease, affecting* either the length of term of oil and gas leases, *the rates of royalty or payment thereunder,* or the assignment of leases, *shall operate to affect the*

*terms and conditions of this lease."* (Italics supplied)

Pertinent regulations at the time the leases were entered into provided:

"Sec. 1. Contracts shall be entered into between lessees of restricted Indian land and owners of gasoline plants for the sale of casing-head gas, which shall provide for a minimum *royalty interest for the Indian lessor of 12½ per cent* (or the royalty specified in the lease) *of the gross proceeds of such sale,* to be computed on the basis indicated by schedule marked 'Figure 1,' unless it is sold on a higher basis, in which event it shall be computed on such basis." (Italics supplied).

"Sec. 3 All contracts for the sale of casinghead gas shall be made subject to the rules and regulations of this department now existing, or hereafter to be promulgated, and shall provide that the schedule marked 'Figure 1' may be revised by the Secretary of the Interior upon notice to all parties concerned, and an opportunity given them to be heard; Provided, such revision shall not apply to existing approved contracts so as to alter the term of the contract, the rate of royalty, the method of computing the royalty, or the basis of such computation, without the consent of the parties thereto.

\* \* \* \* \* \*

Section. 11 Casinghead gas, or the dry gas remaining after extracting gasoline, and not used for developing purposes, may be disposed of and the proceeds accounted for as is provided for by the terms of the lease."

Under the 1951 casinghead gas contracts, which for our purposes are identical, the lessees receive payment for casinghead gas based on fifty percent (50%) of the price for which the same is later sold by Universal to its buyers after certain production costs of Universal are first deducted from this sale price.[1] The Regional Oil & Gas Supervisor, Geological Survey, approved these

---

1. The gas is processed by Universal prior to its sale to a buyer.

contracts. The lessees have remitted royalty of 12½% of the gross proceeds lessees have thus received from Universal for the sale of the casinghead gas. These contracts appear to have been made at arms-length. There is no claim of subsidiary ownership or any other relationship between Defendants and Universal.

In June of 1942 certain oil and gas operating regulations were adopted by the Secretary of the Interior. Pertinent to this litigation is a 1942 regulation found in 30 CFR 221.47 which provides in part as follows:

*"The value of production, for the purpose of computing royalty shall be the estimated reasonable value of the product as determined by the supervisor,* due consideration being given to the highest price paid for a part or for a majority of production of like quality in the same field, to the price received by the lessee, to posted prices and to other relevant matters. *Under no circumstances shall the value of production of any of said substances* [oil and other liquid and gaseous hydrocarbons] *for the purposes of computing royalty be deemed to be less than the gross proceeds accruing to the lessee from the sale thereof or less than the vaue computed on such reasonable unit value as shall have been determined by the Secretary.* (Italics added).

and a regulation found at 30 CFR 221.50 which provides in part as follows:

*"(c) For the purpose of computing royalty the value of wet gas shall be either the gross proceeds accruing to the lessee from the sale thereof or the aggregate value determined by the Secretary* of all commodities, including residue gas, obtained therefrom, *whichever is greater."* (Italics added).

and a regulation found at 30 CFR 221.51 which provides in part as follows:

"A *royalty* as provided in the lease *shall be paid on the value* of one-third (or the lessee's portion if greater than one-third) of *all casinghead* or natural gasoline, butane, propane, or other liquid hydrocarbon substances extracted from the gas *produced from the leasehold.* The *value* of the remainder is an allowance for the cost of manufacture, and no royalty thereon is required. The *value* shall be so determined that the minimum royalty accruing to the lessor shall be the percentage established by the lease of the amount or *value* of all extracted hydrocarbon substances accruing to the lessee under an arrangement, by contract or otherwise, for extraction and sale that has been approved by the supervisor:" (Italics added).

Applying the above regulations the Regional Oil & Gas Supervisor, Geological Survey, (Supervisor) estimated the reasonable value of the casinghead gas produced under the leases, advised Defendants of underpayment, that additional royalty was due and the amount thereof for each lease. Defendants paid the same under protest, appealed the matter to the Commissioner of Indian Affairs and then to the Secretary of Interior both of whom affirmed the Supervisor with the Secretary dismissing the appeal.

Thus, the Plaintiff for the lessors contends that the royalty due on the casinghead gas should be paid on the basis of the reasonable value thereof as determined by the Supervisor. On the other hand lessees contend that they have been remitting royalties within the meaning and intent of the leases and applicable regulations. In this connection lessees contend that by the terms of the leases the later regulations of 1942 above cited are inapplicable as they were made after the approval of the leases and they affect the rates of royalty or payment thereunder. Specifically they contend that as the 1942 regulations were adopted after the two leases were executed and approved the "estimated reasonable value" and "reasonable unit value" provisions thereof are not applicable as they would affect the "rates of royalty or payment (of royalty) thereunder"

within the intent and meaning of the lease agreements between the parties thereto.

It seems clear that regulations passed subsequent to the date of the approval of the leases are not applicable or controlling as to any provisions in the regulations which alter or affect the rates of royalty or payment thereunder as provided in the leases.

■ The Court is first faced with interpreting the language of the original leases with consideration to be given to the regulations then in force and effect. In interpreting this language the Court should strive to ascertain the intent of the parties.

In Cave Construction, Inc. v. United States, 387 F.2d 760 (Tenth Cir. 1967) it was held:

"In the interpretation of contracts the primary function of the judge is to ascertain and effectuate the intention of the parties."

Mee v. Service Specialists, Ltd., 432 F. 2d 30 (Tenth Cir. 1970) holds:

"The meaning of a contract should be arrived at by determining the intention of the parties thereto, upon a consideration of the attendant circumstances, the position of the parties, and the purpose of the contract."

■ In this connection, the Court finds that it was the intent of the parties to the leases that the lessors should receive as royalty 12½% *of the gross proceeds* from the sale of casinghead gas as received by the lessees from the sale of this gas and that it was the intent of the parties as expressed in the leases that the rate of royalty and payment thereof, was *12½% of gross proceeds*

received by lessees. The Court further finds that it was the intent of the parties as expressed in their leases and regulations then made a part thereof that this rate of royalty and payment of royalty could not be affected, altered or changed by a later regulation of the Secretary.

It seems to the Court that the 1942 regulations cited above and the action taken thereunder by the Supervisor in fixing an "estimated reasonable value" of the casinghead gas and then fixing royalty thereon rather than on the gross proceeds received by the lessees, resulting in a significant increase in royalty demanded of lessees by the Plaintiff as shown by a stipulation herein, clearly alter, affect and change the rate of royalty and payment (of royalty) thereunder as the parties had previously agreed upon the same in their leases. In this connection, the Court finds and concludes that the agreed rate of royalty and payment thereof under the leases is not limited to the figure of 12½% but such percentage figure must be tied to gross proceeds received to obtain the rate of royalty and payment thereof under the leases.[2] In other words, the rate of royalty under the leases was tied to gross proceeds and not tied to something else. These are "gross proceeds" leases as a means of fixing royalty rates and payment thereof and are not "estimated value" leases. As the parties contracted in an unambiguous manner that no subsequent regulation shall be applicable if it affects the rates of royalty or payment thereof as fixed by their leases, the Court finds and concludes that the 1942 regulations cited above to the extent that they call for royalty to be paid on the estimated reasonable value of the

2. Rate as defined in *Oxford Universal Dictionary*:

"The amount of a charge or payment, *having relation to some other amount or basis of calculation*." (Italics added)
and in *Webster's New International Dictionary*:

"A charge, payment or price *fixed according to a ratio*, scale, or standard." (Italics added)

clearly shows that it is related to or tied to some other basis of calculation or standard. Here the parties agreed to a rate tied to gross proceeds for the payment of royalty and the Secretary may not untie this agreement.

**1158**

casinghead gas as determined by the Supervisor are not applicable to the leases involved herein and that the action thereunder by the Supervisor and the Secretary as aforesaid violated the agreement of the parties to the leases and is plainly erroneous. Thornley v. Commissioner of Internal Revenue, 147 F.2d 416 (Third Cir. 1945); Johnson v. Udall, 292 F.Supp. 738 (C.D.Cal.1968); Strachan Shipping Company v. Shea, 276 F.Supp. 610 (S.D.Tex.1967).

It follows that the decision of the Secretary sought to be enforced herein by the Plaintiff erroneously violates the contractual agreements of the parties and should not be judicially enforced.

Counsel for Defendants will prepare an appropriate Judgment based on the foregoing, submit the same to opposing counsel and then to the Court for signature and entry herein.