**URQUHART et al.**

v.

**COMMISSIONER OF INTERNAL REVENUE, (two cases).**

**URQUHART**

v.

**COMMISSIONER OF INTERNAL REVENUE.**

**Nos. 11246–11248.**

United States Court of Appeals, Third Circuit.

Argued May 6, 1954.

Decided Aug. 24, 1954.

Joseph F. McVeigh, Philadelphia, Pa. (Thomas M. Cooley, II, and Henry B. Weaver, Jr., Washington, D. C., Francis J. Myers, Cornelius C. O'Brien, Philadelphia, Pa., on the brief), for petitioners.

Alonzo W. Watson, Jr., Washington, D. C. (H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack, Robert N. Anderson, Sp. Assts. to Atty. Gen., on the brief), for respondent.

Before MARIS, KALODNER and HASTIE, Circuit Judges.

KALODNER, Circuit Judge.

The Tax Court determined that certain litigation expenses were capital in nature. 20 T.C. 944 (September 9, 1953). These appeals followed, the taxpayers contending that the expenses, which were incurred by them in the course of patent litigation, were deductible from income as ordinary and necessary expenses within Section 23(a)

(1) or (a)(2) of the Internal Revenue Code.[1]

The relevant facts, which are not in dispute, are as follows:

The taxable year involved is 1946. In that year, and since 1939, the taxpayers, George Gordon Urquhart, Radcliffe M. Urquhart and W. K. B. Urquhart, were participants in a joint venture engaged in the business of inventing, experimenting, developing, and exploiting patents and new processes, licensing and acting as licensor of patents and processes. In 1938 and 1940, George and Radcliffe Urquhart obtained two patents, Nos. 2,106,043 and 2,198,585, respectively, involving fire-fighting equipment. From 1942 through 1946, the sole business of the joint venture was the licensing of these two patents, and in those years the joint venture realized substantial royalties. In 1938, the title holders to patent No. 2,106,043 notified Pyrene Manufacturing Company (Pyrene) that it was infringing on their patent and threatened litigation. On April 28, 1943, they brought suit[2] against American LaFrance Foamite Corporation, a customer of Pyrene, for infringement of both patents, seeking an injunction and recovery of profits and damages. This action was dismissed in April, 1943. On May 5, 1943, Pyrene commenced an action against the patent owners in the United States District Court for the Eastern District of Pennsylvania, seeking a declaratory judgment that both patents were invalid and that its own apparatus and methods did not infringe. A counterclaim was filed asking for an injunction against infringement, and an accounting for profits and damages. No question was raised by Pyrene in this action as to title to, or ownership of, the patents. The case came to trial in June, 1946 and later that year the District Court entered judgment in favor of Pyrene holding that the patents in question were invalid and void.[3] The taxpayers expended $55,748.64 in 1946 for legal fees and other expenses in connection with this litigation, and it is this sum which is the subject of the instant controversy. This Court affirmed, holding the patent claims involved invalid for want of invention.[4]

On July 22, 1949, National Foam System, Inc., the principal non-exclusive licensee of the two patents, commenced action against the two patentees seeking to be relieved of its license; a counterclaim was filed for royalties.[5] On November 29, 1949, the patent owners brought an action in the Court of Claims against the United States asserting validity of their patents and claiming compensation for unauthorized use. In this action judgment was entered for the United States.[6]

A partnership income tax return for 1946 was filed by the taxpayers, in which return deduction in the amount of $55,748.64 was taken for legal fees and litigation expenses. Each of the taxpayers, in individual returns for 1946, showed income from the joint venture in amounts determined after deduction of the expenses on the part of the joint venture. The Commissioner disallowed the deductions the taxpayers claimed on account of the litigation expenses treating them as capital expenditures. The Tax Court sustained the Commissioner's

---

1. 26 U.S.C. § 23 (1946 ed.).

2. See Urquhart v. American-La France Foamite Corp., 1944, 79 U.S.App.D.C. 219, 144 F.2d 542, certiorari denied, 1944, 323 U.S. 783, 65 S.Ct. 273, 89 L.Ed. 625.

3. Pyrene Mfg. Co. v. Urquhart, D.C.E.D. Pa.1946, 69 F.Supp. 555.

4. 3 Cir., 1949, 175 F.2d 408, certiorari denied, 1949, 338 U.S. 826, 70 S.Ct. 73, 94 L.Ed. 502. The issues are clearly spelled out in the reported opinion and need not be reiterated here. An additional ground of invalidity was that certain claims were functional.

5. National Foam System, Inc., v. Urquhart, D.C.E.D.Pa.1952, 103 F.Supp. 433, affirmed, 3 Cir., 1953, 202 F.2d 659.

6. Urquhart v. United States, 1953, 109 F. Supp. 409, 124 Ct.Cl. 441, which discloses that recovery was denied on the ground of misuse of the patents.

action, holding that "the taxpayers were engaged in defending a property interest, the exclusive right to make, use and vend these inventions granted by the patents and were only incidentally engaged in seeking to collect income."

We are of the opinion that the litigation expenses here involved were ordinary and necessary expenses incurred by the taxpayers in carrying on their trade or business, and that they were incurred as normal overhead or operating costs of their business activities. As such, they are deductible under Section 23(a)(1).

We have no doubt that these expenses were ordinary and necessary. Commissioner of Internal Revenue v. Heininger, 1943, 320 U.S. 467, 64 S.Ct. 249, 88 L.Ed. 171; Deputy v. DuPont, 1940, 308 U.S. 488, 60 S.Ct. 363, 84 L.Ed. 416; Welch v. Helvering, 1933, 290 U.S. 111, 54 S.Ct. 8, 78 L.Ed. 212; Kornhauser v. United States, 1928, 276 U.S. 145, 48 S. Ct. 219, 72 L.Ed. 505. There is no dispute that taxpayers were engaged in the business of exploiting and licensing patents. And we have no doubt that the expenses were directly connected with and proximately resulting from the conduct of taxpayers' business. Indeed, the expenditures and the manner in which they came into being are peculiarly normal to the business in which the taxpayers were engaged. It is not of decisive significance that the taxpayers were unsuccessful, at least since Commissioner of Internal Revenue v. Heininger, supra. Nor is it a requirement that the expenses have been incurred in the production of income, or actually productive of income. Bingham's Trust v. Commissioner, 1945, 325 U.S. 365, 65 S.Ct. 1232, 89 L.Ed. 1670.

Nevertheless, the Commissioner characterizes the expenses as capital, i. e., incurred in the defense or perfection of the equivalent of title. He cites Reg-

ulations 111, § 29.24–2, and the apparently settled law that expenditures for the defense or perfection of title are part of the cost of acquisition of capital assets. In this instance he brings that law into play by virtue of our determination in the Pyrene case of the issue of validity. But as we have said before "Taxation is an intensely practical matter, and, it deals with realities not semblances; with substance and not form * * *."[7] It must ever be kept in mind "that the substance of the transactions will prevail over form".[8] And, particularly in the area of taxation with which we are concerned, we "cannot ignore the ways of conduct and forms of speech prevailing in the business world." Commissioner of Internal Revenue v. Heininger, supra, 320 U.S. at page 472, 64 S.Ct. at page 253; Welch v. Helvering, supra. The litigation which gave rise to the expenditures in issue was commonplace patent infringement litigation. It is conceded that no question of title was involved. The form of the action and the circumstance that it was initiated by the alleged infringer do not, at least in this instance, alter the character of the controversy. The Urquharts brought about the litigation by asserting infringement; they forced the step by threatening Pyrene's customers and instituting action against one of them; such affirmative conduct upon the part of the Urquharts was the foundation of the declaratory judgment action. Moreover, in patent infringement actions, the defense of invalidity of patent claims is normally raised, and it is normally disposed of first. Sinclair & Carroll Co., Inc., v. Interchemical Corp., 1945, 325 U. S. 327, 330, 65 S.Ct. 1143, 89 L.Ed. 1644; Rock-Ola Mfg. Corp. v. Cusano, 3 Cir., 1953, 206 F.2d 551, 553–554; compare Pyrene Mfg. Co. v. Urquhart, supra, note 4, 175 F.2d at page 411. In the light of the Urquharts' answer and counterclaim the situation was for gen-

7. Thompson v. Commissioner of Internal Revenue, 3 Cir., 1953, 205 F.2d 73, 78. See also Paxson v. Commissioner of Internal Revenue, 3 Cir., 1944, 144 F.2d 772, 776.

8. Berwind v. Commissioner of Internal Revenue, 3 Cir., 1943, 137 F.2d 451, 453.

eral purposes the same as though they had commenced an infringement action against Pyrene. The declaratory judgment remedy merely enabled a turnabout of parties. Mere form of action is immaterial. Cf. Rassenfoss v. Commissioner, 7 Cir., 1946, 158 F.2d 764. Of course, it is well-settled that the Urquharts remained free to assert infringement against others in the courts, and this freedom extends to the issue of the validity of their patent claims.

Infringement litigation is a far cry from removing a cloud on title, or defending ownership of property. Here, it arose out of and related directly to the exploitation of the invention embodied in the patent. And, in our view, the purposes and intent are the same whether the Urquharts commenced the action, or maneuvered Pyrene into taking the initial litigative step. In Mathey v. Commissioner, 1 Cir., 1949, 177 F.2d 259, 262, which deals with the successful patentee, it was said, at pages 262–263:

> " ' "In patent nomenclature what the infringer makes is 'profits,' what the owner of the patent loses by such infringement is 'damages.' " ' Duplate Corp. v. Triplex Safety Glass Co., 298 U.S. 448, 451, 56 S.Ct. 792, 793, 80 L.Ed. 1274, quoting Diamond Stone-Sawing Machine Co. of New York v. Brown, 2 Cir., 166 F. 306. And usually, although not always, what a patent owner loses from infringement is the acquisition of 'a just and deserved gain' from the exploitation of the invention embodied in his patent. 3 Walker on Patents (Deller's Ed.) § 821. Therefore an award of damages in patent litigation is ordinarily an award of compensation for gains or profits lost

by the patent owner and hence is taxable to him as income in the year received."

Since the Urquharts were engaged in the business of exploiting and licensing patents, we are the more clear that the litigation expenses were incurred to prevent (and recover) damage to their business, that is, to protect, conserve and maintain their business profits. There is no conflict apparent to us, as urged by the Commissioner, with the principle that expenditures which yield benefits over a period of years are not current operating expenses under Section 23(a) (1). Commissioner of Internal Revenue v. Surface Combustion Corp., 6 Cir., 1950, 181 F.2d 444; cf. Commissioner of Internal Revenue v. Heininger, supra. If this principle were applicable here, it would also apply to successful infringement actions like Mathey v. Commissioner, despite the recovery of damages, if only on a proportionate basis. It may be noted, incidentally, that in the patent phase of that case one of the claims of the patent was held invalid: United Shoe Machinery Corporation v. Mathey, 1 Cir., 1941, 117 F.2d 331. Cases like Safety Tube Corp. v. Commissioner, 6 Cir., 1948, 168 F.2d 787, and Falls v. Commissioner, 1946, 7 T.C. 66, exemplify situations in which title to patents are involved, and the expenditures incident to such issue are deemed capital in nature.

We conclude that the expenditures in controversy are within Section 23(a)(1) and are deductible as ordinary and necessary business costs. Kornhauser v. United States, supra; Rassenfoss v. Commissioner, supra; Hochschild v. Commissioner, 2 Cir., 1947, 161 F.2d 817; Levitt & Sons v. Nunan, 2 Cir., 1944, 142 F.2d 795; Appeal of F. Meyer & Brother Co., 1926, 4 B.T.A. 481.[9] The

9. In A.R.R. 98, 2 C.B. 105 (1920), the Committee on Appeals and Review had under consideration the deductibility of expenses incurred by a patent owner in an infringement action. It held: "The Committee is of the opinion that the amounts expended by this corporation after it secured the patent are not a part of the cost of the property for the reason that such amounts do not add to or prolong the life of the property in question and cannot be considered as an improvement or betterment. The amount so expended having none of the elements

expenditures were made in the course of business to protect against infringement and to recover profits and damages and they are not appropriate to be added to the cost of securing the asset, i. e., the patent.

For the reasons stated, the judgment of the Tax Court will be reversed and the cause remanded with directions to proceed in accordance with this opinion.

of improvement or betterment cannot be returned to the corporation through depreciation charges * * *. Only such amounts as represent the actual cost of this patent can be deducted by way of depreciation annually by this corporation. The title and ownership of the patent was in the corporation and the amounts expended were not made in perfecting its ti-tle to the patent already owned and used by the company.

The conclusion of the Committee is that the amounts expended by the corporation in the instant litigation, after the patent had been secured by B and had been transferred to the corporation constitute necessary operating expenses and should not be capitalized." 2 C.B. 105, 107–108.