OPINION. BRUCE, Judge: The question is the amount of long-term capital gain realized by Steckel in 1949. In 1945 Steckel transferred his stock in the Cold Metal Process Company to another stockholder, the Union National Bank of Youngstown, Ohio, trustee of the Leon A. Beeghly Fund. The trustee was to pay for the stock when and if it received certain funds. In 1949 the trustee received a portion of the funds mentioned and was ready to make a partial payment for the stock. However, it was prevented from making a payment to Steckel by an order of the District Court in aid of execution of a judgment against Steckel. The judgment represented an award of just compensation to attorneys, Lurie & Alper, for legal services rendered Steckel and necessary expenses incurred during a 6-year period ending in 1941 in connection with Steckel’s Cold Metal stock and his interest in that corporation. Later in 1949, pursuant to an agreement of the parties (Steckel and Lurie & Alper), the District Court ordered the trustee to pay $225,000 of the amount it was holding for Steckel to the clerk of the District Court to serve as security, in lieu of a supersedeas bond, for a stay of execution pending Steckel’s appeal from the judgment. Respondent determined that Steckel realized taxable gain in 1949 to the extent of the full $225,000 paid to the clerk of the court. Petitioner contends that no gain was realized because the money was not received by Steckel in that year. Alternatively, petitioner contends that the judgment should be taken into account in determining Steckel’s gain, and as a further alternative petitioner argues that the amount ultimately paid in satisfaction of the judgment represented a part of the cost of Steckel’s Cold Metal stock and should be taken into account in determining the amount of gain realized in 1949. We agree with respondent that Steckel received taxable gain in 1949 upon payment of the $225,000 to the clerk of the District Court. The entire payment was for Steckel’s benefit, ultimately to be turned over to him or used to discharge his lawful debt. Under similar circumstances it has been held that the taxpayer realizes gain or receives income at the time of the payment even though the payment is made to a third party to hold pending the outcome of a dispute between the taxpayer and his alleged creditor. Dwight A. Ward, 20 T. C. 332, affd. 224 F. 2d 547; Francis B. Hart, 21 B. T. A. 1001, reversed on other grounds 54 F. 2d 848. We agree with petitioner, however, that the judgment is to be taken into account for the purpose of determining the amount of taxable gain realized in 1949. Accordingly we must determine what, if any, portion of the judgment in favor of Lurie & Alper represented an addition to the cost basis of Steckel’s stock for which the $225,000 payment was made. Both parties agree that this is governed by the nature of the services rendered by Lurie & Alper. Petitioner contends that the services were rendered Steckel either in defense of his title to the stock or in order to protect his investment in the corporation; and therefore the cost of those services should he capitalized. Respondent contends that, with the possible exception of the cost of defending the action by the Standard Slag Company to compel Steckel to sell 160 shares of his Cold Metal stock, no part of the cost of the services was a capital expenditure, but that the full amount was an ordinary and necessary expense for the management, conservation, or maintenance of property held for the production of income within the purview of section 23 (a) (2) of the Internal Revenue Code of 1939. If an expenditure is a proper addition to cost it should be capitalized even though it would otherwise be deductible as an expense. Daniel S. W. Kelly, 23 T. C. 682, affd. 228 F. 2d 512; Shipp v. Commissioner, 217 F. 2d 401, affirming a Memorandum Opinion of this Court dated June 15, 1953; E. W. Brown, 19 T. C. 87, affirmed on this point 215 F. 2d 697. In addition to expenses for defending or perfecting title to property, which concededly must be capitalized, this Court has held that “Payments made by a stockholder of a corporation for the purpose of protecting his interest therein must be regarded as an additional cost of his. stock * * Eskimo Pie Corporation, 4 T. C. 669, 676, affd. 153 F. 2d 301. See also South American Gold & Platinum Co., 8 T. C. 1297, affd. 168 F. 2d 71. However, in both of the cases last cited, the stockholder paid expenses or obligations of the corporation in order to protect its interest therein, and the payment was in a real sense an addition to the capital of the corporation. In the instant case the expenses of defending the suit to compel Steckel to sell 160 shares of his Cold Metal stock were clearly a capital expenditure; but, for the reasons hereinafter stated, that is of no aid to petitioner. In addition, that part of the fees allocable to the stockholders’ derivative action against the directors of Cold Metal should be capitalized. In that action Steckel’s attorneys carried a substantial portion of the burden of proving breaches of duty on the part of the other directors which resulted in the court ordering those directors to repay Cold Metal the moneys of which it had been wrongfully deprived. This action was beneficial to Cold Metal and to the stockholders in general. In such cases the expense of the action is nor mally borne by the corporation which receives the direct benefit. Charles Kay Bishop, 25 T. C. 969. Where the expense is borne by a stockholder, the expenditure represents an additional contribution to the capital of the corporation. The expense of attempting to obtain financial aid for Cold Metal falls in the same category. As in Eskimo Pie Corporation and South American Gold & Platinum Co., both supra, the payment of expenses of the corporation by a stockholder in order to protect his interest therein is a proper addition to the cost of his stock. The remaining fees, however, were not shown to be a capital expenditure. The amount attributable to the other services was not a proper expense of the corporation. To a large extent the remaining services consisted of watching the day-by-day affairs of Cold Metal in order to safeguard Stecbel’s investment and of trying to obtain financing for Steckel in order to conserve his stock interest in that corporation, and were not rendered in directly defending or perfecting Steckel’s title to the stock. The remaining item is the cost of appealing the money judgment obtained by Cold Metal against Steckel. Normally, the cost of defending such an action is not deductible as an expense even where an adverse judgment would force the taxpayer to sell part of his income-producing property. Lykes v. United States, 343 U. S. 118; Frank M. Cobb, 10 T. C. 380, affd. (C. A. 6) 173 F. 2d 711, certiorari denied 338 U. S. 832, rehearing denied 338 U. S. 882. The rationale of the Lyhes and Cobb cases is not that the expenditure should be capitalized, but that the Conservation of income-producing property is too remote to allow the deduction of the expense. Here there might be a closer relationship than in the Lyhes and Cobb cases between the legal expenses incurred and the properly being conserved, and for that reason the cost of the action might or might not be deductible ás a nonbusiness expense. However, Steckel’s title to the stock was not even remotely involved in the litigation, and in no event could the cost of the action be capitalized as an expenditure for defending his title. Ordinarily, expenses which merely protect a taxpayer’s financial position, so as to allow him to retain property, are not proper additions to the cost of that property. See dissenting opinion of Judge Frank in Hochchild v. Commissioner, (C. A. 2) 161 F. 2d 817, 819. Although a substantial portion of the judgment in favor of Lurie & Alper represented a capital expenditure, not all of that amount is allocable to the shares for which the $225,000 payment was made to the clerk of the court. First, no part of the cost of defending the suit by the Standard Slag Company is allocable to those shares for which the payment was made. That was a suit to compel Steckel to sell 16Q shares of his Cold Metal stock. While an appeal was pending in that action, Steckel decided to accept the Standard Slag Company’s offer; and in 1938 he delivered the 160 shares in return for $56,000. The full cost of defending that action is allocable to those 160 shares. Second, while that portion of the cost of the services and expenses of Lurie & Alper attributable to the stockholders’ derivative action and to obtaining financing for Cold Metal was a capital expenditure, it should be allocated equally among all of the shares held at the time those services were rendered. Cf. Commissioner v. Laguna Land & Water Co., (C. A. 9) 118 F. 2d 112; John B. Hollister, 44 B. T. A. 851. Most of those services Were performed in 1935 and 1936 when Steckel owned 580 shares of Cold Metal stock. The $225,000 in question represented a partial payment for only 161 of those shares plus a half interest in the proceeds of 18 additional shares. While an allocation is required, it is impossible either to determine with exactitude what portion of the total fees is attributable to the derivative action and to the efforts to obtain financing for Cold Metal or to ascertain with any certainty what portion of this capital expenditure is allocable to the stock interest for which the $225,000 payment was received. However, bearing heavily on petitioner, because the inexactitude is due, at least in part, to it and to Steckel (Cohan v. Commissioner, 39 F. 2d 540; James Petroleum Corporation, 24 T. C. 509 (on appeal C. A. 2)), w¿ have found that services and expenses rendered and incurred by Lurie & Alper in the amount of $33,000 is a proper addition to-the cost of the stock for which the $225,000 payment was made. For the above reasons it is our opinion that Steckel did not realize taxable gain in excess of $192,000 because of the payment of the $225,000 to the clerk of the court in 1949. However, to the extent of $192,000, we cannot upset the respondent’s determination despite the fact that the disbursement of any portion of that amount to Lurie & Alper might have entitled Steckel to deduct the amount disbursed as expenses and capital losses on other stock. The computation of the gain realized on the disposition of stock is not affected by capital losses on other stock and by nonbusiness expense deductions. Therefore, when in 1949 the trustee paid $225,000 to the clerk of the court, Steckel was certain to realize gain in the amount of $192,000 on the stock for which the payment was made; and the gain was realized at that time even though the money was not received by him. As stated above, the realization of gain on the disposition of stock is not to be deferred solely because the proceeds are deposited with a third party who will ultimately either pay the money to the taxpayer or use the money to discharge the taxpayer’s lawful debt. The fact that the payment of the debt will give rise to capital losses on other stock and nonbusiness expense deductions, neither of which are to be taken into account in computing the gain in question, is not in our opinion a logical reason for creating an exception to the general rule and postponing the realization of gain. Furthermore, any capital losses or nonbusiness expense deductions to which Steckel was entitled upon the payment of the judgment in 1951 cannot be related back to 1949. Arrowsmith v. Commissioner, 344 U. S. 6; Estate of Hetty B. Levy, 17 T. C. 728. Decision will be entered wnder Rule 50.