ALLEGHANY CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 55210, 56964, 60459. Filed April 30, 1957.

*Thomas C. Burke, Esq.*, for the petitioner.
*Norman A. Peil, Jr., Esq.*, for the respondent.

#### OPINION.

ARUNDELL, *Judge:* Respondent has determined deficiencies and has made claim for increased deficiencies in the income tax of petitioner as follows:

| Docket | Year | Deficiency | Increase | Total |
|---|---|---|---|---|
| 55210 | 1948 | $22,230.00 | $5,929.39 | $28,159.39 |
| 55210 | 1949 | 1,425.00 | 670.83 | 2,095.83 |
| 55210 | 1950 | 3,797.86 | | 3,797.86 |
| 56964 | 1951 | 14,357.29 | | 14,357.29 |
| 60459 | 1952 | 16,634.14 | 5,421.00 | 22,055.14 |

The only issue remaining is whether certain amounts deducted by petitioner in its corporation income tax returns for the years 1948 through 1952 under the heading, "Protection of investment in stock of Mo. Pac. R. R. Co. (in reorganization under Bankruptcy Act)" are deductible as ordinary and necessary business expenses under section 23 (a) (1) (A) of the Internal Revenue Code of 1939,[1] as petitioner contends, or should be capitalized and disallowed as expense deductions, as respondent contends.

All other issues have been agreed upon and will be taken into consideration in the recomputations to be made under Rule 50.

All the facts were stipulated. Only those deemed necessary for our consideration of the remaining issue need be stated here.

Petitioner is a corporation duly organized under the laws of the State of Maryland with its principal office in New York City. It is a closed-end investment company whose sole business is investment in, and management of its investments in, securities of other companies. It filed its Federal income tax returns for the calendar years 1948 through 1952 on the accrual basis with the proper officer (collector or director of internal revenue) for the district of Wilmington, Delaware.

Petitioner in its income tax returns for the years 1948 through 1952 claimed as deductions from gross income under the heading of "Protection of investment in stock of Mo. Pac. R. R. Co. (in reorganization under Bankruptcy Act)" the following amounts:

| Year | Amount |
|---|---|
| 1948 | $74,103.68 |
| 1949 | 36,768.76 |
| 1950 | 45,467.95 |
| 1951 | 188,601.49 |
| 1952 | 196,171.76 |
| Total | 541,113.64 |

The respondent in his several deficiency notices disallowed as deductions from gross income all of the above amounts except in his deficiency notice for 1948 and 1949 he only disallowed $58,500 and $25,000, respectively, and gave as his explanation the following:

[1] SEC. 23. DEDUCTIONS FROM GROSS INCOME.
In computing net income there shall be allowed as deductions:
(a) EXPENSES.—
(1) TRADE OR BUSINESS EXPENSES.—
(A) In General.—All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * *.

(a) The deductions claimed amounting to $58,500.00 in 1948 and $25,000.00 in 1949 are disallowed as capital expenditures not deductible under Section 23 (a) of the Internal Revenue Code. A further reason for the disallowance is that $8,500.00 was refunded in 1951 and it was not determined that the remaining expenditures would not be refunded, at least in part, until 1951.

In an amended answer, the respondent affirmatively alleged that petitioner for 1948 and 1949 had deducted the above-mentioned amounts of $74,103.68 and $36,768.76; that respondent had disallowed only the respective amounts of $58,500 and $25,000; that by inadvertence the respondent had allowed as deductions the remaining portions of such expenditures in the respective amounts of $15,603.68 and $11,768.76; and that these two latter amounts are also capital expenditures and are not deductible.

On January 1, 1948, petitioner held 499,200 shares of old common stock of Missouri Pacific Railroad Company (sometimes referred to as Missouri Pacific) purchased in the open market in 1929 and 1930 at a cost to it of $40,233,514.41. The total outstanding shares of such stock were 828,395 shares. On December 31, 1952, petitioner still held 396,000 such shares with an original cost basis to it of $31,032,312.

In 1933, it became necessary for Missouri Pacific to place its property under the jurisdiction of the Federal courts and the Interstate Commerce Commission (sometimes referred to as Commission) for reorganization under section 77 of the Bankruptcy Act. Thereafter, and during the continuance of the reorganization proceedings, Missouri Pacific was without assets, its entire estate being in the hands of the trustee in reorganization appointed by the bankruptcy court.

Various plans of reorganization were proposed by interested parties which would have wiped out petitioner's common stock interest in Missouri Pacific. Petitioner opposed these plans before the Commission and in the courts and sought to have adopted a plan of reorganization which would give value to the Missouri Pacific common stock and thus preserve petitioner's investment therein. At no time was petitioner's title to, or ownership of, Missouri Pacific common stock questioned, the controversy having involved solely the question whether any value was to be attributed to the common stock. Each plan which would have denied participation by the common stock in the reorganized company was, in turn, defeated. Finally, in 1955, a plan of reorganization of Missouri Pacific which gave recognition to the value of the common stock was approved by the bankruptcy court and the plan became effective on March 1, 1956. Pursuant to the plan, petitioner received in exchange for the 396,000 shares of old common stock of Missouri Pacific held by it 19,800 shares of new class B common stock of Missouri Pacific having a total market value of $9,256,500.

In the course of opposing plans of reorganization of Missouri Pacific which did not provide for any allocation of securities to petitioner

by reason of its investment in the common stock of Missouri Pacific and in the course of attempting to have approved a plan of reorganization which would provide for such an allocation, petitioner expended the above amounts totaling $541,113.64, which it deducted in its returns for 1948 through 1952.

The total amount of $541,113.64 expended by petitioner in connection with the reorganization of Missouri Pacific was for the following payments:

| | | |
|---|---|---:|
| (a) | To White & Case for legal fees and expenses | $180,814.27 |
| (b) | To Holland & Hart for legal fees and expenses | 82,777.12 |
| (c) | To Missouri Pacific | 229,750.00 |
| (d) | To T. C. Davis, chairman of board of Missouri Pacific | 16,000.00 |
| (e) | For expert witnesses | 22,964.18 |
| (f) | For travel and miscellaneous of petitioner | 13,368.75 |
| (g) | For auditing of proxy ballots | 2,500.00 |
| (h) | For public relations services | 9,000.00 |
| (i) | Reimbursement of expenditures ($7,560.68 plus $8,500) | (16,060.68) |
| | Total | 541,113.64 |

The amounts totaling $180,814.27 were paid pursuant to an arrangement between petitioner and White & Case whereby petitioner agreed to pay, from time to time, said firm's reasonable fees in representing petitioner in its efforts to preserve its investment in Missouri Pacific common stock. White & Case agreed to make claim in the reorganization proceedings for the amount of the fees so paid to it by petitioner and for the amount of its additional, reasonable charges for services to petitioner over and above the amounts actually paid to it by petitioner up to the time of making such claim. In the event, but only in the event, that White & Case was paid as an allowance out of the assets in reorganization a sum which, when added to the amounts already paid to it by petitioner, exceeded the amount of its total reasonable charges for its services, said firm was to reimburse petitioner in the amount of such excess. Petitioner had no similar arrangement with Holland & Hart.

Pursuant to the foregoing arrangement, petitioner and White & Case in 1950 made a joint application for compensation in the amount of $125,000 for services of White & Case to petitioner rendered during the period January 8, 1945, to March 27, 1950. In 1951, the bankruptcy court made an allowance of $70,392.63 for such services but said sum was retained by White & Case pursuant to agreement with petitioner in 1951 to cover additional charges of White & Case to petitioner which had accrued by that time. Accordingly, petitioner did not receive any reimbursement pursuant to the arrangement with White & Case described above.

At the time of the court allowance in 1951, petitioner did get reimbursed for the sum of $8,500 which it had paid in 1948 to Theodore

Yntema for his services as an expert witness on behalf of petitioner in the Missouri Pacific reorganization proceedings, such reimbursement having been made pursuant to an arrangement with Yntema whereby petitioner would be reimbursed if and to the extent that the court made an allowance for his services. At the same time, petitioner received an allowance from the court of $7,560.68 in reimbursement for miscellaneous expenditures which it had made. The foregoing reimbursements, totaling $16,060.68, were applied by petitioner to reduce the deduction which it claimed for items of a similar nature in 1951.

The payments to Missouri Pacific covered such items as the cost of proxy solicitation, printing of briefs, advertising, postage, mailing expenses, and traveling expenses of its officers. They were made to the old corporate entity as opposed to the enterprise in the hands of the trustee in reorganization. These expenses were not part of the expenses of reorganization of Missouri Pacific, which was being undertaken by the trustee, but were made by petitioner in the course of its opposition to plans of reorganization of Missouri Pacific which did not provide for any allocation of securities to petitioner by reason of its investment in the common stock of Missouri Pacific and in the course of its attempts to have approved a plan of reorganization which would provide for such an allocation. The payments related primarily to the cost of campaigns for rejection of plans of reorganization which would have wiped out the common stock.

The foregoing payments to Missouri Pacific aggregating $229,750 were made pursuant to agreements between petitioner and Missouri Pacific whereby petitioner would be reimbursed in the event that the bankruptcy court were to make an allowance out of which said sums could be repaid. At the time of each payment, petitioner received from Missouri Pacific a promissory note for the amount thereof and, simultaneously, petitioner and Missouri Pacific executed a letter agreement which recognized that Missouri Pacific was without funds and that repayment would be made only in the event that reimbursement was received by Missouri Pacific from the bankruptcy estate. These payments were not treated as loans by petitioner but were charged directly to expense.

The payments to Davis totaling $16,000 were to cover his expenses in opposing plans of reorganization which would have wiped out petitioner's investment in the common stock of Missouri Pacific. No agreement with respect to reimbursement was made in connection with these payments.

As contemplated by the letter agreements, Missouri Pacific made claim in the reorganization proceedings for reimbursement for the expenditures made by it for the period from January 8, 1945, through March 27, 1950, totaling $11,904.76. The bankruptcy court allowed

in 1951 the sum of $6,889.63. Missouri Pacific, however, retained that sum with petitioner's consent to defray additional expenses in 1951. The court allowances in 1951 were finally dispositive of all claims against the estate of the debtor covering the period through March 27, 1950. Claims for the period subsequent to March 27, 1950, are still pending.

Our primary question is whether petitioner is entitled to deduct the amounts in question as ordinary and necessary business expenses. In *Edward J. Miller*, 37 B. T. A. 830, 832, we said:

What constitutes an allowable deduction for ordinary and necessary business expense often raises a difficult question * * *. However, it is well settled that expenditures made to protect or to promote a taxpayer's business, and which do not result in the acquisition of a capital asset, are deductible. * * * For a comprehensive discussion of this point, and citation of authorities, see *First National Bank of Skowhegan, Maine*, 35 B. T. A. 876, 884.

Excerpts from the *Skowhegan* case just referred to are in the margin.[2]

Later, in *Estate of A. P. Steckel*, 26 T. C. 600, 608, we also said:

Ordinarily, expenses which merely protect a taxpayer's financial position, so as to allow him to retain property, are not proper additions to the cost of that property. * * *

Cf. *South American Gold & Platinum Co.*, 8 T. C. 1297, 1301.

In the instant case it appears to be self-evident that all petitioner had in mind when it expended the $541,113.64 in question was to protect the $31,032,312 it had invested in the common stock of Missouri Pacific. This was a part of petitioner's stock in trade as a closed-end investment company. To protect this investment was well within the scope of its business, which consisted of investment in, and management of, securities of other corporations. No question as to title or validity of ownership of this investment is involved. All petitioner was attempting to do was to make sure that when the final plan of reorganization was adopted and approved by the Interstate Commerce Commission and the Federal courts the common stockholders of Missouri Pacific

---

[2] "This Board and the courts have repeatedly allowed deductions where the disbursement was made to protect or promote the taxpayer's business. *Harold Mortenson*, 3 B. T. A. 300; *Alfred Le Blanc*, 7 B. T. A. 256; *Seufert Brothers Co.* v. *Lucas*, 44 Fed. (2d) 528, reversing 14 B. T. A. 1023; *A. King Aitkin*, 12 B. T. A. 692; *Louisiana Jockey Club, Inc.*, 13 B. T. A. 752; *Edward A. Pierce*, 18 B. T. A. 447; *Helvering* v. *Community Bond & Mortgage Corporation*, 74 Fed. (2d) 727, affirming 27 B. T. A. 480, cases where disbursements made to protect taxpayer's business were held deductible as ordinary and necessary expenses; *G. T. Wofford*, 15 B. T. A. 1225; petition to review denied, 49 Fed. (2d) 1027; *E. L. Potter*, 20 B. T. A. 252; *H. M. Howard*, 22 B. T. A. 375; *Commissioner* v. *Chicago Dock & Canal Co.*, 84 Fed. (2d) 288; *Kornhauser* v. *United States*, 276 U. S. 145, cases involving attorney fees and/or compromise of litigation held deductible as ordinary and necessary expenses; *Poinsett Mills*, 1 B. T. A. 6; *Anniston City Land Co.*, 2 B. T. A. 526; *Killian Co.*, 20 B. T. A. 80; *Yamhill Electric Co.*, 20 B. T. A. 1232; *Fairmont Creamery Corporation* v. *Commissioner*, 89 Fed. (2d) 810, cases involving donations that were held deductible as ordinary and necessary expenses. In each of the foregoing cases there was a direct connection between the expenditure made and the business operated."

would retain an interest in the reorganized company. For over 20 years prior to 1955 each of the plans considered would have denied any participation in the reorganized company by the holders of the old common stock. Finally, in 1955, a plan was approved and became effective on March 1, 1956, whereby petitioner received in exchange for its old common shares, new shares having a market value of $9,256,500. We think it is clear that the expenditures in question were made for no other purpose than to protect petitioner's business. It is stipulated that petitioner became liable in the years in which the deductions were claimed for all of the amounts claimed in the years 1948 through 1952 and that the expenditures claimed were reasonable in amount.

The fact situation here is distinguishable from such cases relied upon by respondent as *Eskimo Pie Corporation*, 4 T. C. 669, affirmed per curiam (C. A. 3, 1946) 153 F. 2d 301, and *Missouri-Kansas Pipe Line Co.* v. *Commissioner*, (C. A. 3, 1945) 148 F. 2d 460, in that in those cases the expenditures sought to be deducted were made by the taxpayer on behalf of another corporation. In the instant case the expenditures in question were made solely on behalf of petitioner and, as we said in *Estate of A. P. Steckel, supra,* such expenditures are not to be treated as capital expenditures.

We do not think the fact that some of the expenditures in question were made through the shell of the old Missouri Pacific brings them within the ambit of such cases as *Eskimo Pie Corporation, supra,* and *Missouri-Kansas Pipe Line Co., supra.* When Missouri Pacific placed its property in the hands of the Federal courts for reorganization under section 77 of the Bankruptcy Act, it became a mere corporate shell devoid of both assets and income. Petitioner, as the majority holder of Missouri Pacific's common stock, found it advantageous to inject into this shell sufficient financial blood to keep the corporation alive. In return, the corporation did petitioner's bidding in the reorganization proceedings. Although petitioner received from Missouri Pacific a promissory note for each of the advances made to the shell, respondent has made no contention that the advances were loans. Instead, he contends that they were contributions to capital by a stockholder. We hold they were neither loans nor contributions to capital. Neither petitioner nor Missouri Pacific treated the advances as loans in their books of account. The payments had nothing to do with the operations of Missouri Pacific, and could by their nature have benefited only the common stockholders. All the payments were made in the course of opposing plans of reorganization of Missouri Pacific which did not provide for any allocation of securities to petitioner by reason of its investment in the common stock and in the course of attempting to have approved a plan of reorganization which would provide for such an allocation.

Neither do we think the deductions claimed should be denied in the years in which they were incurred simply for the reason that there was a possibility that at some future date petitioner might receive a reimbursement for some of the expenditures. One of the elementary principles of Federal income tax accounting is that income and deductions must be accounted for on an annual basis in accordance with the method of accounting employed by the taxpayer. See *North American Oil Consolidated* v. *Burnet*, 286 U. S. 417 (1932). Petitioner employed the accrual method and under that method is entitled to deduct expenses as they accrue. The case of *Richard A. Drachman*, 23 T. C. 558, cited by respondent, does not support his contention. In that case the taxpayer had been treated as a general creditor with respect to his claim for reimbursement and, accordingly, as a debtor-creditor relationship existed, the deduction was disallowed for the year in which the reimbursable payment was made. In the instant case, no debtor-creditor relationship existed as to any of the payments, there being only a contingent possibility of reimbursement.

We hold, therefore, that the expenditures in question are deductible as ordinary and necessary business expenses in the years claimed by petitioner under section 23 (a) (1) (A) of the Internal Revenue Code of 1939. *Kornhauser* v. *United States*, 276 U. S. 145; *Rassenfoss* v. *Commissioner*, (C. A. 7, 1946) 158 F. 2d 764; *First National Bank of Skowhegan*, 35 B. T. A. 876; *Edward J. Miller, supra; Estate of A. P. Steckel, supra.* Cf. *Welch* v. *Helvering*, 290 U. S. 111 (1933) ; *Commissioner* v. *Heininger*, 320 U. S. 467 (1943) ; *L. Heller & Son, Inc.*, 12 T. C. 1109; *Hochschild* v. *Commissioner*, (C. A. 2, 1947) 161 F. 2d 817, reversing 7 T. C. 81; *Urquhart* v. *Commissioner*, (C. A. 3, 1954) 215 F. 2d 17, reversing 20 T. C. 944.

Reviewed by the Court.

*Decisions will be entered under Rule 50.*

---

TURNER, *J.*, dissenting: I am unable to see how the expenditures herein may be classified as expenses of doing business, and deductible under section 23 (a) (1) (A), rather than additional costs of the shares of Missouri Pacific stock which petitioner received through the reorganization, to which the expenditures were directed. An item of $13,368.75 is listed as having been expended "[f]or travel and miscellaneous of petitioner," but from the general statement preceding, I assume that the expenditures making up that sum, as in the case of the other expenditures listed, were directed to the reorganization of Missouri Pacific, out of which petitioner received the shares of stock it thereafter owned.