WILLIAM A. HEATH and ANNA R. HEATH, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Heath v. Commissioner
Docket No. 216-81.
United States Tax Court
T.C. Memo 1983-399; 1983 Tax Ct. Memo LEXIS 381; 46 T.C.M. (CCH) 698; T.C.M. (RIA) 83399; July 13, 1983. Daniel Hartnett, for the petitioners. Scott D. Anderson, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined deficiencies in petitioners' income taxes for calendar years 1977 and 1978 in the amounts of $5,940 and $497, respectively. As a result of concessions made by petitioners, the sole *382 issue remaining for decision is whether petitioners' 1977 expenditures of $3,000 for land surveys and $8,100 in legal fees, made in connection with a Motion for Judgment to Establish Boundary Lines, constitute business expenses deductible under section 162[1] or were capital expenditures within the meaning of section 263. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioners William A. Heath and Anna R. Heath, husband and wife, resided in Townsend, Virginia, at the time of filing their petition. Petitioners timely filed their joint Federal income tax returns for calendar years 1977 and 1978 with the Internal Revenue Service Center, Memphis, Tennessee. In 1966, petitioners acquired a 127-acre farm and an additional 12-foot-wide strip of land located in Northampton County, Virginia. [2] The farm originally was part of a larger parcel of land owned by David H. Abbott. In 1905, Mr. Abbott deeded the farm to Mary Richardson. At that time, Mr. Abbott also conveyed to Mary Richardson *383 a 12-foot-wide strip of land which ran from the farm to a nearby paved road, Brighton Road; a survey was not made to determine the boundaries of the 12-foot strip of land. [3] At the time petitioners acquired the farm and road in 1966, no survey was made of the 12-foot strip. All owners subsequent to Mr. Abbott's ownership of the 127-acre farm have utilized the same 12-foot-wide strip as a private dirt road, running in a north-south direction, to connect the farmland to Brighton Road. [4] In 1976, 1977 and 1978 the estate of Wilhelmina S. Skidmore (Skidmore Estate) owned a portion of the land on the west of the 12-foot-wide strip. Robert F. Wyatt, Jr. also owned land to the west of this strip and Robert H. Downes and J. Hanson Downes owned the property to the east. In August 1976, the Skidmore *384 Estate beneficiaries hired John E. Chubb, a land surveyor certified in Virginia, to survey the estate's property. As a result of the survey the beneficiaries determined that the 12-foot-wide strip, which petitioners claimed as their private dirt road, infringed on land belonging to the estate. The beneficiaries viewed the private road as occupying approximately 7/8 acre of land owned by the Skidmore Estate. Petitioners were farmers, and for years they had planted approximately 35 acres of the 127-acre farm with Irish potatoes. The 12-foot-wide strip provided petitioners their sole access to their farm and was the exclusive means of moving machinery, including a potato planter and a front nozzle truck, to the planted acreage. In March 1977, petitioners planted their spring crop of Irish potatoes. The potato crop, when harvested, would yield a gross return to petitioners of between $60,000 and $70,000.During the 90 days following the planting, petitioners planned to cultivate the potatoes, to spray for weeds, and finally to dig the potatoes when mature. However, soon after the planting, claiming ownership of some of petitioners' 12-foot-wide strip, one of the Skidmore Estate beneficiaries, *385 Mr. Barcroft, totally obstructed petitioners' access to the 12-foot-wife strip. Mr. Barcroft placed poles and cinder blocks across the 12-foot-wide strip. On April 8, 1977, petitioners filed a lawsuit in the Circuit Court of Northampton County, Virginia, seeking to temporarily enjoin the Skidmore Estate beneficiaries from blocking and obstructing petitioners' free use of the 12-foot-wide strip. That day, the Circuit Court granted the temporary injunction for the period of April 8, 1977, to July 28, 1977, and ordered that a hearing be set on July 26 and July 27, 1977, concerning the granting of a permanent injunction. In May 1977 petitioners hired Granville F. Hogg, a land surveyor certified in Virginia, to survey the boundaries of the 12-foot-wide strip. On May 25, 1977, Mr. Hogg completed the survey. On June 16, 1977, petitioners filed with the Circuit Court a Motion for Judgment to Establish Boundary Lines to the 12-foot-wide strip and asked that the motion be consolidated with the hearing set for July 26 and July 27. On July 14, 1977, the Skidmore Estate beneficiaries filed an answer to petitioners' motion. On September 12, 1977, Mr. Hogg prepared a revised survey showing *386 the boundaries of the 12-foot-wide strip. [5] On October 26, 1977, the Circuit Court entered a final order establishing the boundary lines of the 12-foot-wide strip. The Circuit Court determined that the boundary lines of the 12-foot-wide strip were those as shown on the revised survey. This survey located the dirt road, which petitioners had been using, on the 12-foot strip. Petitioners paid Mr. Hogg $3,000 in 1977 for the land surveys. Additionally, petitioners paid Benjamin W. Mears, Jr. and Daniel Hartnett $8,100 in 1977 for their legal services with respect to the temporary injunction and the Motion for Judgment to Establish Boundary Lines. On their Federal income tax return for 1977, petitioners claimed business expense deductions for the legal expenses and survey costs incurred in 1977. In his statutory notice of deficiency, respondent disallowed the claimed amounts with the explanation that-- Legal expense in the amount of $8,100.00 claimed on your 1977 return which was incurred in defending title *387 to a roadway running from a highway to your property was a capital expenditure within the meaning of section 263 of the Internal Revenue Code and, therefore, is not an allowable deduction. Survey costs in the amount of $3,000.00 claimed on your 1977 return which was incurred in connection with legal action to defend title to a roadway running from a highway to the end of your property was a capital expenditure within the meaning of section 263 of the Internal Revenue Code and, therefore, is not an allowable deduction. OPINION Whether legal and survey expenses incurred by a taxpayer are deductible as ordinary and necessary business expenses under section 162 or are nondeductible capital expenditures within the meaning of section 263[6] has been considered in numerous cases. This Court and other courts have consistently held that the cost of defending or perfecting title to property is a capital expenditure. E.g., Spangler v. Commissioner,323 F.2d 913, 917-919 (9th Cir. 1963), affg. a Memorandum Opinion of this Court; *388 Reed v. Commissioner,55 T.C. 32, 39-40 (1970). See also section 1.263(a)-(2)(c), Income Tax Regs.
Petitioners take the position that the $8,100 in legal fees and $3,000 in survey fees which they paid in 1977 with respect to their Motion for Judgment to Establish Boundary Lines of their 12-foot-wide strip of land are deductible as ordinary and necessary business expenses under section 162. Petitioners reason that the dispute which led to these *389 payments arose from their need to gain access to their 12-foot-wide strip of land and thus to their potato farm from which they earned a portion of their livelihood. They therefore contend that under the holdings of Industrial Aggregate Co. v. United States,284 F.2d 639 (8th Cir. 1960); Lewis v. Commissioner,253 F.2d 821, 827 (2d Cir. 1958), affg. 27 T.C. 158 (1956); Alleghany Corporation v. Commissioner,28 T.C. 298 (1957), they are entitled to the claimed deduction. On the other hand, respondent contends that petitioners paid the legal and survey fees to defend or to protect their title to the 12-foot-wide strip of land and, therefore, that the expenditures must be capitalized pursuant to section 263. Respondent argues that whether this expenditure is deductible as a business expense or is to be capitalized depends on the origin of petitioners' claim.Respondent relies on Woodward v. Commissioner,397 U.S. 572, 575 (1970); United States v. Gilmore,372 U.S. 39 (1963). See also Soelling v. Commissioner,70 T.C. 1052 (1978). The court in Industrial Aggregate Co. v. United States,supra at 645, *390 described the primary purpose test as follows: if the primary or sole purpose of the suit is to perfect or defend title, the expenditures are not deductible. * * * On the other hand, even though title may be involved, if its defense or perfection is not the primary purpose of the litigation, the expenditures do not encounter the barrier of the regulation's standard and they may qualify instead as ordinary and necessary expenses. * * * The Supreme Court, however, in Woodward v. Commissioner,supra, held that where expenditures arise with respect to "defending or perfecting title to property," they are capital in nature and the "primary purpose" test has no application. [7] In this respect the Court stated (at 576-577): More difficult questions arise with respect to another class of capital expenditures, those incurred in "defending or perfecting title to property." Treas. Reg. on Income Tax sec. 1.263(a)-2(c). In one sense, any lawsuit brought against a taxpayer may affect his title to property--money or other assets subject to lien. *391 The courts, not believing that Congress meant all litigation expenses to be capitalized, have created the rule that such expenses are capital in nature only where the taxpayer's "primary purpose" in incurring them is to defend or perfect title. See, e.g., Rassenfoss v. Commissioner of Internal Revenue, 158 F.2d 764 (C.A. 7th Cir. 1946); Industrial Aggregate Co. v. United States, 284 F.2d 639, 645 (C.A. 8th Cir. 1960). This test hardly draws a bright line, and has produced a melange of decisions, which, as the Tax Court has noted, "[i]t would be idle to suggest * * * can be reconciled." Ruoff v. Commissioner, 30 T.C. 204, 208 (1958).[Fn. ref. omitted.] We agree with the Tax Court and the Court of Appeals that the "primary purpose" test has no application here. That uncertain and difficult test may be the best that can be devised to determine the tax treatment of costs incurred in litigation that may affect a taxpayer's title to property more or less indirectly, and that thus calls for a judgment whether the taxpayer can fairly be said to be "defending or perfecting title." * * * See also Madden v. Commissioner,514 F.2d 1149 (9th Cir. 1975); *392 Soelling v. Commissioner,supra;Reed v. Commissioner,supra.
As we explained in Boagni v. Commissioner,59 T.C. 708, 713 (1973), the origin-of-the-claim test-- does not contemplate a mechanical search for the first in the chain of events which led to the litigation but, rather, requires an examination of all the facts. The inquiry is directed to the ascertainment of the "kind of transaction" out of which the litigation arose. * * * Consideration must be given to the issues involved, the nature and objectives of the litigation, the defenses asserted, the purpose for which the claimed deductions were expended, the background of the litigation, and all facts pertaining to the controversy.* * * [Fn. *393 ref. omitted.] The origin-of-the-claim test is a more objective standard than the primary purpose test. In our view, the expenditures involved in the instant case directly affected petitioners' title to property and as a result of these expenditures the question of petitioners' title was involved. Thus, the origin-of-the-claim test is properly to be applied in this case. [8]
Petitioners assert that the origin of their lawsuit was "to remove the poles placed across the 12-foot strip to gain access to their farm in order to continue the farming of the Irish potatoes previously planted so that a financial disaster might be avoided." In support of their position, petitioners discuss several cases and compare them to the instant case. [9]
*394 Petitioners attempt to contrast Madden v. Commissioner,supra, and their case. In the Madden case, the taxpayers incurred legal fees in connection with their commercial orchard property. They unsuccessfully attempted to limit condemnation of this land by a governmental agency to the taking of a flowage easement rather than a fee-simple interest. The Circuit Court applied the origin-of-the-claim test and held that the dispute was related to the sale and acquisition of the land, and thus the legal fees were capital expenditures under section 263. Here, the purpose of the lawsuit was to establish boundaries to property to which petitioners held title. Industrial Aggregate Co. v. United States,supra, and Kornhauser v. United States,276 U.S. 145 (1928), are distinguishable from the instant case, and petitioners' reliance on these cases to show that expenditures of litigation may be deductible as ordinary and necessary business expenses and are not "necessarily, automatically rendered nondeductible by the regulation [section 1.263, Income Tax Regs.]" is misplaced. The Industrial *395 Aggregate Co. case involved a lawsuit concerning the taxpayer's operating covenants with regard to gravel pits and the taxpayer's right to continued title to leasehold interests. The Kornhauser case involved legal fees paid for the defense of an accounting action against a former partner of a partnership. In each case the court allowed the taxpayer to deduct the legal expenses incurred in connection with the lawsuit because the primary purpose and the proximate cause of the expenditures were the taxpayer's business. Whatever may be said for the test applied in those factually distinguishable cases, it is clear that under the facts here present the determination is properly to be based on the origin of petitioners' claim. See also United States v. Gilmore,supra at 49. Applying the origin-of-the-claim test to the facts of the instant case, we conclude that the lawsuit between petitioners and the Skidmore Estate beneficiaries had its roots in defending title to the 12-foot-wide strip of land. Petitioners purchased the 12-foot strip along with the 127-acre farm in 1966; however, a survey was not made of the property at that time. Petitioners merely *396 assumed that they owned the same 12-foot strip that was worn by two tire tracks; they had no legal assurance that they owned that particular land as opposed to a nearby or adjoining strip. Thus, while an immediate problem to be resolved by litigation may have concerned access to petitioners' potato crop, the origin of the litigation arose from the question of whether petitioners actually had title to the 12-foot-wide strip that they had been utilizing as the sole access to their farmland. The final order by the Circuit Court of Northampton County, Virginia, confirms our view. The final order relies upon a survey made by Mr. Hogg in 1977 to-- ascertain, find and designate * * * the true boundary lines to all that certain strip or parcel of land of which Mary F. Richardson, died, seized and possessed, same being a 12-foot strip running the whole length of the lands of Robert F. Wyatt, Jr., et als, formerly the lands of David H. Abbott from North to South; bounded on the North by the State Highway Route 655, on the East by the lands of Robert H. Downes and J. Hanson Downes, on the South by other lands of William A. Heath and on the West by the lands of Robert F. Wyatt, Jr., et als, *397 and the heirs of Wilhelmina Skidmore, deceased, all as shown on that certain plat introduced into evidence and marked Plaintiff's Exhibit B, entitled "Granville F. Hogg, Box 117, Cheriton, Virginia, Disputed Boundary. * * * The Circuit Court order clearly is not phrased in terms of allowing petitioners access to certain located property known to be theirs; instead, the court is establishing petitioners' title and boundary lines to a 12-foot strip of land previously believed to be their property. Petitioners testified that the farmland produced a portion of their earned income and was therefore their business. From the record it is clear that the sums expended for the legal fees and survey were nonrecurring expenditures.These expenditures would assure petitioners' right to utilize their property at all future times in order to earn an income from the farm in 1977 and all subsequent years. [10] In essence, the expenditures were made to safeguard petitioners' 1966 property acquisition and to defend their title to that 12-foot-wide strip of land. Therefore, we conclude that the legal fees and survey expenses incurred by petitioners were nondeductible capital expenditures.
*398 Decision will be entered for the respondent.
Footnotes
1. Unless otherwise stated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the years here in issue.↩
2. Petitioners owned several farms from which they earned their livelihood. ↩
3. The land to the west of the 12-foot-wide strip was owned by David H. Abbott at the time he conveyed the farm and the 12-foot-wide strip of land. ↩
4. During the taxable years in issue, the 12-foot-wide strip of land was marked with two tracks, presumably from wheels of machinery rolling on the dirt strip.↩
5. Mr. Hogg prepared a revised survey because, when making the first survey, he was unable to locate all the original stakes which demarcated the 12-foot-wide strip.↩
6. Sec. 162(a) provides in part: SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General.--There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, * * * In relevant part, sec. 263(a) provides: SEC. 263. CAPITAL EXPENDITURES. (a) General Rule.--No deduction shall be allowed for-- (1) Any amount paid out for new buildings or for permanent improvements or betterments made to increase the value of any property or estate. * * *↩
7. The origin-of-the-claim test has been applied in cases involving legal expenditures made in connection with acquisition or disposition of a capital asset. See Woodward v. Commissioner,397 U.S. 572 (1970), and its companion case, United States v. Hilton Hotels Corp.,397 U.S. 580↩ (1970).
8. On brief, petitioners rely heavily on and indicate a preference for the utilization of the primary purpose test. However, by alternative argument, petitioners contend that application of the origin-of-the-claim test to the facts at bar is favorable to them.↩
9. Petitioners seek to distinguish Lowry v. Commissioner,T.C. Memo. 1968-173, relied on by respondent, in which we held the taxpayer's expenditure of $1,000 to obtain a survey of her Montana ranch to be a capital expenditure and not a deductible business expense. In our view, the Lowry case is not distinguishable from the instant case. We there indicated that the taxpayer failed to show the use to which the ranch was dedicated, whether it was being prepared for sale, and the taxpayer's length of ownership. We found that the taxpayer incurred the survey expense "to establish the bounds of her ranch property so that she might take measures to protect the land from encroachment by others" and it was "nonrecurring and resulted in a benefit to the property which has a useful life beyond the year in which the survey was made." Lowry v. Commissioner,T.C. Memo. 1968-173, 27 TCM 843↩-844, 37 P-H Memo. T.C. par.68,173, p. 932-68.Here also the benefit of the establishment of the boundaries of the 12-foot strip extended beyond the current year.
10. See Louisiana Land and Exploration Co.7 T.C. 507, 515 (1946), affd. 161 F.2d 842↩ (5th Cir. 1947), which indicated that where the expenditure is nonrecurring in nature and is enjoyed over a relatively lengthy period of business operation, it is a capital expenditure rather than a deductible business expense.